**DURACELL, INC., Appellant,**

v.

**U.S. INTERNATIONAL TRADE COMMISSION, Appellee.**

**Appeal No. 85-2072.**

United States Court of Appeals, Federal Circuit.

Dec. 9, 1985.

counsel were Gregg A. Dwyer, of Duracell Inc., Bethel, CT, and Charles E. Koob and David T. Eames, of Simpson, Thacher & Bartlett, New York City.

Velta A. Melnbrencis, of the Dept. of Justice, Washington, D.C., argued for appellee. With her on the brief were Richard K. Willard, Acting Asst. Atty. Gen., and David M. Cohen, Director, Washington, D.C.

Before SMITH, NIES, and BISSELL, Circuit Judges.

EDWARD S. SMITH, Circuit Judge.

Appellant Duracell, Inc. (Duracell), challenges the President's disapproval of a determination, under 19 U.S.C. § 1337 (1982), of the United States International Trade Commission (Commission). The Commission has moved to dismiss this appeal (1) for lack of a final determination which is appealable to this court pursuant to 19 U.S.C. § 1337 and under the grant of jurisdiction in 28 U.S.C. § 1295(a)(6), and (2) for lack of jurisdiction of this court to review the President's disapproval. We grant the motion and dismiss the appeal for lack of jurisdiction.

## Issues

The issues are whether the court possesses jurisdiction to review the President's disapproval of a determination of the Commission pursuant to 19 U.S.C. § 1337(d) and, if so, whether the President's disapproval of the determination of the Commission complied with the requirements of 19 U.S.C. § 1337(g)(2).

## Background

James N. Bierman, of Foley & Lardner, Washington, D.C., argued for appellant. With him on the brief were Jay N. Varon, Sheila C. McDonald and Jonathan B. Baker, of Foley & Lardner, Washington, D.C., of

On November 5, 1984, the Commission determined that the importation of certain "gray market" alkaline batteries was a violation of section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337 (1982) (section 337),

and that the imports caused substantial injury to Duracell.[1]

On January 4, 1985, within 60 days of receiving a copy of the determination, the President disapproved the Commission's determination.[2] Duracell bases its appeal to this court primarily on a contention that the President acted unlawfully by disapproving the determination "for other than policy reasons." We are asked to determine the reasons for the President's disapproval of the Commission's determination, and whether those reasons comply with the requirements of 19 U.S.C. § 1337(g)(2), specifically, whether the President's disapproval was *for policy reasons,* as required by the statute.

### Jurisdiction

The United States Court of Appeals for the Federal Circuit (Federal Circuit) has broad jurisdiction "to review the *final determinations* of the United States International Trade Commission * * * made under section 337."[3] (Emphasis supplied.)

However, to determine the appeal rights of a litigant one must look to the provisions of section 337. There a litigant is afforded a right to appeal in the following terms:[4]

> Any person adversely affected by a final determination of the Commission under subsection (d), (e), or (f) of this section may appeal such determination, within 60 days after the determination becomes final, to the United States Court of Appeals for the Federal Circuit for review in accordance with chapter 7 of title 5.
> * * *

The Presidential action taken in this case is authorized by section 337(g) and, in particular, in (g)(2) which reads:[5]

> (2) If, before the close of the 60–day period beginning on the day after the day on which he receives a copy of such determination, the President, for policy reasons, disapproves such determination and notifies the Commission of his disapproval, then, effective on the date of such notice, such determination and the action taken under subsection (d), (e), or (f) of this section with respect thereto shall have no force or effect.

Nothing in section 337(g) or elsewhere in the statute provides a litigant with a right of review of the *President's* decision per se.

The question then becomes whether there is a reviewable final determination of the Commission under (d), (e), or (f) which necessarily brings the President's decision before us for review because it is the foundation for that determination.[6]

Under the statutory scheme, a determination of the Commission under (d), (e), or (f), while effective immediately, becomes "final" for purpose of appeal only if the President approves or if the 60–day review period passes without his disapproval.[7] In this case, no determination of the Commission has become final in view of the President's disapproval. Further, no action under (d), (e), or (f) was taken by the Commission following disapproval. Indeed, the parties represent to the court that the Commission took no action of any kind except to mark the file closed. On the other hand, if we were to set aside the President's action and hold that the Commission's determination became final, then Duracell has no standing to appeal. It has not been aggrieved by any Commission determination.

1. *In re Certain Alkaline Batteries,* 6 ITRD 1849 (BNA) (Inv. No. 337–TA–165).

2. 50 Fed.Reg. 1,655 (Jan. 11, 1985).

3. 28 U.S.C. § 1295(a)(6) (1982).

4. 19 U.S.C. § 1337(c), *as amended by* Trademark Clarification Act of 1984, Pub.L. No. 98–620, tit. IV, subtitle C, § 413, 98 Stat. 3362.

5. 19 U.S.C. § 1337(g)(2) (1982).

6. *Cf. Florsheim Shoe Co., Div. of Interco., Inc. v. United States,* 744 F.2d 787 (Fed.Cir.1984) (protest relating to duties imposed after President revoked duty-free treatment).

7. 19 U.S.C. § 1337(g)(4) (1982); *Young Engineers, Inc. v. U.S. Int'l Trade Comm'n,* 721 F.2d 1305, 1313 (Fed.Cir.1983).

■ Thus, as the statute is designed, the decision by the President is not reviewable either directly or indirectly in this court and we must, therefore, dismiss for lack of jurisdiction.

### Presidential Action

Alternatively, if our jurisdictional analysis is incorrect, in the interest of complete disposition should appellant be able to obtain further review, we conclude that Duracell's arguments with respect to the illegality of the President's disapproval must fail on the facts of this case.

There is no question that the President disapproved the determination involved herein within 60 days. Duracell, however, argues that the statute allows the President to disapprove for policy reasons only. Duracell further asserts that, because the President's disapproval in the present case was not for policy reasons, the disapproval was invalid.

Duracell points to the legislative history and cites the following language:[8]

Therefore, it was deemed appropriate by the Committee to permit the President to intervene before such determination and relief become final, when he determines that policy reasons require it. The President's power to intervene would not be for the purpose of reversing a Commission finding of a violation of section 337; such finding is determined solely by the Commission, subject to judicial review.

Duracell also cites *Young Engineers, Inc.:*[9] "[t]he President may disapprove only 'for policy reasons,' not because of the merits of an investigation." In this case the President included the reasons for his disapproval with his letter to the Commis-

sion on January 4, 1985.[10] First, the President *stated* that he was disapproving the determination *for policy reasons* pursuant to section 337(g)(2). Second, the President stated:[11]

The Departments of Treasury and Commerce, on behalf of the Cabinet Council on Commerce and Trade, have solicited data from the public concerning the issue of parallel market importation and are reviewing responses with a view toward formulating a cohesive policy in this area. Failure to disapprove the Commission's determination could be viewed as a change in the current policy prior to the completion of this process.

Duracell focuses on that part of the President's disapproval which refers to the conflict between the Commission's interpretation of section 42 of the Lanham Act, the Treasury Department's interpretation, and recent court decisions. The President stated that he wanted to avoid the appearance of an alteration of the Treasury Department's interpretation. Duracell argues that the President's disapproval was for "legal reasons." Duracell's approach requires one to give no effect to the President's statement that he acted expressly for policy reasons as required, or to his express statement that disapproval was necessary to confirm his existing policy.

■ The same language singled out by Duracell is at least equally supportive of the conclusion that the President acted for policy reasons. There is no requirement in section 337 or in the legislative history that the President articulate or detail the reasons for his disapproval of a Commission determination. It is sufficient that the President disapprove the determination for *his* policy reasons. "Policy" is a broad

8. S.REP. NO. 1298, 93d Cong., 2d Sess. 199, *reprinted in* 1974 U.S.CODE CONG. & AD.NEWS 7186, 7331–32. *See also* H.R.REP. NO. 1644, 93d Cong., 2d Sess. 46, *reprinted in* 1974 U.S. CODE CONG. & AD.NEWS 7367, 7391 ("Presidential intervention for policy reasons only").

9. *Young Eng'rs, Inc.,* 721 F.2d at 1313.

10. 50 Fed.Reg. 1,655 (Jan. 11, 1985).

11. *Id.*

concept which includes, but is not limited to:[12]

impact on United States foreign relations, economic and political * * * [and] upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers.

■ "In the area of international trade, 'intimately involved in foreign affairs,' 'congressional authorizations of presidential power should be given a broad construction and not "hemmed in" or "cabined, cribbed, confined" by anxious judicial blinders.' "[13] Inasmuch as the President acted timely, stated that he was acting for policy reasons, and stated reasons other than the merits of whether there had been a violation of section 337, our inquiry must end.[14] For the reasons stated, the President must be held to have acted according to law.

*Conclusion*

There is no final determination of the Commission for this court to review, and the appeal must be dismissed for lack of jurisdiction.

DISMISSED.

12. S.REP. NO. 1298, 93d Cong., 2d Sess. 199, *reprinted in* 1974 U.S.CODE CONG. & AD.NEWS 7186, 7331.

13. *American Ass'n of Exporters & Importers-Textile & Apparel Group v. United States,* 751 F.2d 1239, 1248 (Fed.Cir.1985), quoting from *Florsheim Shoe Co.,* 744 F.2d at 793, which, in turn, quoted from *South Puerto Rico Sugar Co. Trading Corp. v. United States,* 334 F.2d 622, 632 (Ct.Cl.1964).

14. *Florsheim Shoe Co.,* 744 F.2d at 795.