**VISCOFAN, S.A., Petitioner,**

v.

**U.S. INTERNATIONAL TRADE COMMISSION, Union Carbide Corporation, and Teepak, Inc., Respondents.**

**Appeal No. 85–2282.**

United States Court of Appeals,
Federal Circuit.

March 18, 1986.

Thomas V. Heyman, Dewey, Ballantine, Bushby, Palmer & Wood, of New York City, argued, for petitioner. With him on brief were Saul P. Morgenstern and Claire Ann Koegler. Steven H. Bazerman and Julius Rabinowitz, Kuhn, Muller & Bazerman, of New York City, of counsel.

Judith M. Czako, Office of the Gen. Counsel, Washington, D.C., argued, for respondent Intern. Trade Com'n. With her on brief were Lyn M. Schlitt, Gen. Counsel and Michael P. Mabile, Asst. Gen. Counsel.

H. Blair White, P.C., Sidley & Austin, Chicago, Ill., argued for respondent Union Carbide. With him on brief were David T. Pritikin, Rex E. Lee, Richard E. Young, Sidley & Austin, Washington, D.C., C.

Frederick Leydig, Homer J. Schneider, Charles S. Oslakovic, Mark E. Phelps, Leydig, Voit & Mayer, Ltd., of Chicago, Ill., and Thomas I. O'Brien, Clyde V. Erwin, Union Carbide Corp., Danbury, Conn.

Before FRIEDMAN, Circuit Judge, NICHOLS, Senior Circuit Judge, and BISSELL, Circuit Judge.

FRIEDMAN, Circuit Judge.

This petition to review challenges (1) aspects of a remedial order the United States International Trade Commission (Commission) entered in a proceeding under section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337 (1982), and 19 U.S.C. § 1337a (1982), and (2) the Commission's refusal to declassify confidential information that had been submitted during the Commission proceedings pursuant to a protective order. We affirm the challenged portions of the remedial order and dismiss the challenge to the refusal to declassify as an issue over which we have no jurisdiction.

I

A. In response to a complaint filed by respondent, Union Carbide Corporation (Carbide), the Commission in October 1983 initiated an investigation to determine whether the petitioner, Viscofan, S.A. (Viscofan), had committed unfair methods of competition and unfair acts in violation of section 337. The alleged unfair practices consisted of the importation and selling by Viscofan, a Spanish corporation, of certain skinless sausage casings. Carbide's complaint to the Commission alleged that Viscofan had manufactured the casings by processes that (1) violated two of Carbide's patents, and (2) involved trade secrets of Carbide that Viscofan had misappropriated. Carbide is one of the two major American manufacturers and sellers of skinless sausage casings.

The Commission consolidated this investigation with another investigation it previously had instituted, involving similar claims of patent infringement (but no claim of misappropriation of trade secrets) made

by the other major American manufacturer and seller of skinless sausage casings, Teepak, Inc. (Teepak). No issues relating to the Teepak investigation are involved in the case before us.

In its opinion, the Commission stated that the

> general manufacturing process for skinless sausage casings as practiced by each of the parties to these investigations involves three distinct manufacturing operations: (1) chemical preparation, which involves the manufacture of viscose from natural cellulose fibers; (2) simultaneous regeneration of the cellulose and continuous formation of accurately-sized cellulose tubes in extrusion machines, including drying the extruded casing under carefully controlled conditions and winding it onto reels of semi-finished material called "flat stock;" and (3) shirring, which is a finishing operation during which lengths of flat stock are finely pleated and compressed into short, self-supporting, tubular sticks. [Footnote omitted.]

The Commission further stated:

> Meatpackers use skinless sausage casings to make sausage products by sliding a stick of shirred casing over the stuffing tube or horn of a sausage stuffing machine and pumping a meat emulsion into the stick as it de-shirrs, or extends. The meat-filled casing is twisted at intervals to define individual sausages or links. The long chain of links produced is cooked, after which the casing is normally removed, and the resulting product is sold as "skinless" sausages or frankfurters. [Footnote omitted.]

Following a hearing, the administrative law judge in July 1984 rendered a 363–page initial decision holding that Viscofan had violated section 337 and 19 U.S.C. § 1337a by (1) infringing a valid patent owned by Teepak, and (2) misappropriating Carbide's trade secrets. He determined that Viscofan had misappropriated six of those trade secrets.

The Commission stated:

The ALJ found all the other elements of a violation of section 337 to exist in each investigation. The ALJ also determined that respondent Viscofan had failed to prove its affirmative defenses of patent misuse and unclean hands, wherein it alleged that complainants Teepak and Union Carbide had conspired to monopolize the manufacture of skinless sausage casings in the United States by means of illegal patent pooling, cross-licensing, price-fixing, and predatory behavior.

The Commission declined to review the initial decision, which thereby became the agency's final decision. The Commission then considered the relief stage of the proceedings and received submissions on the relief and public interest aspects of the case from the parties and others.

The Commission's final order, which became effective in January 1985, excluded "from entry into the United States for the remaining term of the patent" "[s]mall caliber sausage casings manufactured abroad in accordance with the process disclosed" in the Teepak patent. It provided that persons desiring to import such casings "may petition the Commission to institute" further proceedings to determine whether the casings sought to be imported fell within the bar of the preceding paragraph.

Paragraph 3 of the Commission's order, the validity of which is a major issue before us, "excluded from entry into the United States for ... ten (10) years from the date of this order" "[s]mall caliber cellulose sausage casings manufactured by Viscofan" or any affiliated company or related business entity.

The Commission explained at considerable length the reasons that led it to adopt paragraph 3, which we discuss in some detail in part II, *infra*. Here we merely summarize the Commission's reasoning.

The Commission rejected Viscofan's contention that "a cease and desist order is the only appropriate remedy in a trade secrets investigation...." It stated that because there was no way in which it could determine from the finished casings whether they had been manufactured by processes using the misappropriated trade secrets, and because it could not police Viscofan's manufacturing operations in Spain to determine whether the misappropriated secrets were being used, an exclusion order was "the only remedy that promises to be reasonably effective."

In setting the period of exclusion at 10 years, the Commission stated that the normal period of relief in a trade secrets misappropriation case is the time it would take the misappropriator "independently to develop the technology using lawful means." It rejected Viscofan's contention that the proper basis for ascertaining that period was the time it would have taken Viscofan to discover each trade secret separately, because "this approach ignores the interrelationships between and among the trade secrets and technology involved" and the fact that Viscofan had misappropriated six such interrelated trade secrets. The Commission concluded that it should "consider a single independent development time" for the six misappropriated trade secrets together. On the basis of the evidence Carbide submitted and Carbide's arguments regarding the time necessary independently to develop an integrated manufacturing process without the benefit of the six misappropriated trade secrets, the Commission concluded that its "remedial order should apply for a period of ten years."

Finally, the Commission concluded that the 10-year period of exclusion should run from the date of its order rather than, as Viscofan argued, from the date of the misappropriation of the trade secrets. It stated: "The facts of this investigation, particularly the fact that the misappropriation involved an actual theft of trade secrets, support the conclusion that Viscofan should not be credited with the time between the misappropriation and the entry of the Commission's remedial order."

B. During the Commission proceedings, Carbide submitted to the Commission certain material relating to the circumstances surrounding the misappropriation of its trade secrets. This material was submitted as "confidential business information" pur-

suant to a protective order of the administrative law judge that provided for confidential treatment of such information.

Later in the proceedings Viscofan moved to redesignate this material as nonconfidential and thus make it a part of the public record in the case. Viscofan stated that it wanted to use this information in connection with a foreign court proceeding. The administrative law judge denied the motion.

Although the Commission denied review of the administrative law judge's initial decision, it granted review of his denial of Viscofan's motion to redesignate the material as nonconfidential. The Commission affirmed the administrative law judge's ruling. It stated that "[t]he proper standard of review on this issue is whether the ALJ abused his discretion in denying respondent Viscofan's motion" and concluded that "[t]he ALJ's decision was reasonable and not an abuse of discretion...."

The Commission stated: "Evidence in a section 337 investigation is gathered solely for the purposes of that proceeding. The statute and rules do not provide any support for the notion that information should be declassified because it is sought for use in a foreign court proceeding." It pointed out that the material involved " 'expenditures' of Union Carbide, and thus qualify as confidential business information within the literal terms of the rules and the ALJ's protective order. Nothing in rule 201.6 as it existed when the protective order in this investigation issued, and the subject information was produced, limited the type of 'expenditure' which would qualify as confidential."

## II

Section 337 requires the Commission, upon determining a violation of the section, either to "direct that the articles concerned, imported by any person violating the provision of this section, be excluded from entry into the United States" (subsection (d)) or to direct any person violating the section "to cease and desist from engaging in the unfair methods or acts involved, unless after considering the effect of such order

upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, it finds that such order should not be issued." (Subsection (f)(1)).

■ Under this provision the Commission has broad discretion in selecting the form, scope and extent of the remedy, and judicial review of its choice of remedy necessarily is limited. *See Canadian Tarpoly Co. v. United States International Trade Commission*, 640 F.2d 1322, 1326, 68 CCPA 121, 125, 209 USPQ 33, 35–36 (1981); *Sealed Air Corp. v. United States International Trade Commission*, 645 F.2d 976, 989, 68 CCPA 93, 107, 209 USPQ 469, 480–81 (1981). As the Supreme Court stated in the leading case of *Jacob Siegel Co. v. Federal Trade Commission*, 327 U.S. 608, 66 S.Ct. 758, 90 L.Ed. 888 (1946), in words that are equally applicable to this case:

> The Commission has wide discretion in its choice of a remedy deemed adequate to cope with the unlawful practices in this area of trade and commerce. Here, as in the case of orders of other administrative agencies under comparable statutes, judicial review is limited. It extends no further than to ascertain whether the Commission made an allowable judgment in its choice of the remedy. ... The Commission is the expert body to determine what remedy is necessary to eliminate the unfair or deceptive trade practices which have been disclosed. It has wide latitude for judgment and the courts will not interfere except where the remedy selected has no reasonable relation to the unlawful practices found to exist.

*Id.* at 611–13, 66 S.Ct. at 760 (footnote omitted). *See also Sealed Air Corp., supra*, ("it is not the function of a court to substitute a different remedy of its own design for that chosen by the ITC, or to substitute its view of the public interest for that of the ITC"). 645 F.2d at 989 (footnote omitted).

We evaluate Viscofan's challenges to paragraph 3 of the commission's order, in the light of these principles.

As noted, paragraph 3 excluded from entry into the United States for 10 years from the date of the order skinless sausage casings manufactured by Viscofan or an affiliated company. Viscofan contends that this provision is (A) overly broad because it is not limited to sausage casings manufactured by use of the specific trade secrets found to have been misappropriated, and (B) excessively long in duration because the 10–year period of exclusion (1) improperly was based upon the time it would have taken Viscofan independently to develop the entire sausage casing manufacturing process rather than the time it would have taken Viscofan independently to discover separately each of the misappropriated trade secrets, and (2) should have run not from the date of the Commission's order but from the date of the misappropriation.

■ A. 1. In rejecting Viscofan's contention that the only appropriate remedy against the misappropriation of trade secrets would be a cease and desist order barring Viscofan from importing sausage casings made by a process that utilized the particular trade secrets Viscofan had misappropriated, the Commission justifiably concluded that such an order would not effectively correct the violations found.

The Commission pointed out that "there is no means by which we can determine from the casings whether they were manufactured by a process which incorporates the misappropriated trade secrets." It noted that "Viscofan has represented that it can put into operation a separate production line, which does not incorporate the misappropriated trade secrets, use only that line for U.S. production, certify each shipment, and open its plant to inspection by Commission-appointed experts to ensure that it is not using the misappropriated trade secrets." The Commission concluded, however, that this would be an unsatisfactory and impossible method for insuring

compliance with a cease and desist order because

on the record in this investigation the Commission cannot confidently base the remedy on Viscofan's assurances, and the Commission has neither the jurisdiction nor means to conduct plant inspections in Spain. Therefore, exclusion is the only remedy which promises to be reasonably effective.

Moreover, as the Commission also pointed out, Viscofan's position not only would not provide a practical, effective method for insuring that the sausage casings Viscofan imported would not be made by processes utilizing the misappropriated trade secrets, but also "ignores the interrelationships between and among the trade secrets and technology involved, as well as the ALJ's conclusion that six specific trade secrets were found to have been misappropriated. ... The trade secret aspects are not independent of the non-trade-secret aspects of the technology involved."

Considering all the circumstances, we cannot say that the Commission had not "made an allowable judgment in its choice of the remedy" in adopting a 10–year exclusion order rather than a cease and desist order, or that "the remedy selected has no reasonable relation to the unlawful practices found to exist." *Jacob Siegel, supra,* 327 U.S. at 612–13, 66 S.Ct. at 760.

Viscofan argues that in trade secret litigation, a normal remedial order bars the misappropriator from using only the particular secrets he has taken. The cases upon which it relies, however, all involved private litigation and did not implicate the important public interest considerations implicated in a Commission proceeding under section 337. In the language of the statute, that proceeding is designed to protect American industry from "[u]nfair methods of competition and unfair acts in the importation of articles into [or their sale in] the United States ... the effect or tendency of which is to destroy or substantially injure an industry, efficiently and economically operated, in the United States, or to prevent the establishment of such an industry,

or to restrain or monopolize trade and commerce in the United States...."

2. Viscofan further argues that it is entitled to petition the Commission to show that sausage casings it wants to import have been made by processes that do not utilize misappropriated trade secrets. Pointing to the provision in the portion of the order excluding goods made by processes that infringe the Teepak patent that permits Viscofan to demonstrate to the Commission that particular processes do not infringe, Viscofan apparently believes that the lack of a similar provision in the trade secrets portion of the order bars it from seeking such relief from the Commission with respect to trade secrets.

At oral argument, however, Commission counsel stated that Viscofan could seek such relief pursuant to section 211.57 of the Commission's rule. That section provides that "[w]henever any person believes that changed conditions of fact ... require that a final Commission action be modified or set aside, in whole or in part, such person may file with the Commission a motion requesting such relief." 19 C.F.R. § 211.57(a) (1985). Moreover, paragraph 6 of the order provides: "The Commission may amend this Order in accordance with the procedure described in section 211.57 of the Commission's Rules of Practice and Procedure (19 C.F.R. § 211.57)."

There is nothing in the Commission's order that precludes Viscofan from filing with the Commission a petition for an exception to paragraph 3 of the order to permit Viscofan to import sausage casings manufactured by processes that do not involve or depend upon the trade secrets Viscofan misappropriated. If Viscofan can demonstrate to the Commission's satisfaction that it has developed and will continue to use manufacturing processes totally untainted by the trade secrets it misappropriated, there is no reason to think that the Commission would not permit Viscofan to import the product.

■ B. 1. In setting the length of the order at 10 years, the Commission correctly recognized that "the duration of relief in a case of misappropriation of trade secrets should be the period of time it would have taken respondent independently to develop the technology using lawful means." The Commission concluded that in the circumstances of this case the basis for determining the development time was the time it would have taken Viscofan to create the manufacturing processes involving the misappropriated trade secrets and not, as Viscofan urged, the time it would have required Viscofan to discover each particular trade secret independently and without regard to the total process. Here, as in the case of the Commission's decision to adopt an exclusion rather than a cease and desist order, we cannot say the Commission abused its discretion or that this aspect of the order is not supported by substantial evidence.

Viscofan misappropriated six specific trade secrets of Carbide. The Commission stated that "to issue a remedial order based on the time necessary to develop each such aspect would ignore the fact that Viscofan had the benefit of the entire machine, system, or set of standards, including non-trade-secret elements, which it had misappropriated, from which to work in developing its 'new technology.' The trade secret aspects are not independent of the non-trade-secret aspects of the technology involved." The agency justifiably concluded "to consider a single independent development time for the six trade secrets found by the ALJ to have been misappropriated."

There was conflicting evidence regarding the time it would have required Viscofan independently to develop its own technology without the benefit of the misappropriated trade secrets. Viscofan's witnesses viewed the independent development of each of the six misappropriated trade secrets as relatively simple tasks that could have been done in a short period. Carbide, on the other hand, based upon its witnesses' testimony, suggested that "a shirring technology could be developed in between nine to twelve years, and an extrusion technology could be developed in between twelve to fifteen years."

■ The Commission's conclusion that it would have taken Viscofan 10 years independently to develop the technology is supported by the evidence in the record, and we have no basis for rejecting the Commission's determination that that period is the appropriate duration of the order. As the Commission explained: "To now conclude that Viscofan could have developed alternative technology for the misappropriated trade secrets in a relatively short time would be to give it the benefit of having had the misappropriated trade secrets for a period of years as a basis from which to work. We believe that this would be a wholly inequitable result."

Viscofan argues, however, that *Syntex Ophthalmics, Inc. v. Novicky*, 745 F.2d 1423, 223 USPQ 695 (Fed.Cir.1984), *vacated*, —— U.S. ——, 105 S.Ct. 1740, 84 L.Ed.2d 807 (1985), *reinstated on remand*, 767 F.2d 901, 226 USPQ 952 (Fed.Cir.1985), compels a different conclusion. In *Syntex*, this court stated that under governing Illinois law, "an injunction in a trade secret case must be limited to the appropriate length of time necessary for the defendant to duplicate the trade secret by lawful means." 745 F.2d at 1435, 223 USPQ at 704 (citations omitted). That is substantially the same standard the Commission applied here. *Syntex* was a private suit, and the opinion there did not address the question here, which is whether the necessary development time was that required to develop the complete processes in which the misappropriated trade secrets were used rather than the time necessary to discover each trade secret independently.

In *Syntex*, the court significantly reduced the duration of the 20-year injunction the district court entered. It did so, however, because it concluded that the only evidence upon which the district court based that injunction—testimony that more than 20 man-years were spent developing the misappropriated trade secret—was insufficient to support the injunction, primarily because the 20 man-years actually had been expended by several people during only two years. *Syntex* does not support Viscofan's position that the duration of the exclusion order should be based upon the time required to develop each trade secret separately.

■ 2. Viscofan further contends that even if a 10-year order is appropriate, its starting date should have been the date of the misappropriation, which Viscofan contends was not later than January 1979, rather than the date on which the Commission's order became final in January 1985. Viscofan relies again on *Syntex*, this time on the holding there that the maximum permissible duration of the injunction was eight years from the misappropriation or four years from the preliminary injunction.

In determining that the 10-year exclusion should run from the date of the Commission's order, the Commission pointed out that in its only previous ruling on this issue, the period of exclusion had so run. *In re Certain Apparatus for the Continuous Production of Copper Rod*, 206 USPQ 138 (U.S.I.T.C.1979). The Commission concluded: "The facts of this investigation, particularly the fact that the misappropriation involved an actual theft of trade secrets, support the conclusion that Viscofan should not be credited with the time between the misappropriation and the entry of the Commission's remedial order."

The appropriate starting date for an exclusion order based upon misappropriation of trade secrets necessarily depends on the facts of the particular case. In *Syntex* the district court's injunction ran for 20 years from the date of misappropriation. The fact that this court, in reducing the length of the injunction in *Syntex*, indicated that the maximum permissible injunction would be eight years from misappropriation (or four years from the date of the preliminary injunction), does not establish that the Commission abused its discretion in this case in making the effective date of its 10-year exclusion the date of its order.

### III

■ Viscofan challenges the Commission's affirmance of the administrative law judge's refusal to declassify certain materi-

al relating to the misappropriation of the trade secrets that had been submitted to the Commission as confidential business records pursuant to a protective order of the administrative law judge. We do not reach the merits of that issue, since we agree with the Commission that we have no jurisdiction to review the refusal to declassify as part of this review proceeding.

Under 28 U.S.C. § 1295(a)(6) (1982), this court has exclusive jurisdiction

> to review the final determinations of the United States International Trade Commission relating to unfair practices in import trade, made under section 337 of the Tariff Act of 1930....

Congress has specifically defined the "final determinations ... under section 337 ..." which this court may review:

> Any person adversely affected by a final determination of the Commission under subsection (d), (e), or (f) of this section may appeal such determination to the United States Court of Appeals for the Federal Circuit....

19 U.S.C. § 1337(c) (1982). Commission determinations under subsections (d), (e), and (f) are those excluding articles from entry, excluding articles from entry during an investigation except under bond, and cease and desist orders, respectively. The Commission's refusal to declassify the confidential material, however, was not "a determination" under any of those subsections.

The refusal to declassify was unrelated to the propriety of the exclusion order, which we have jurisdiction to review under subsection (d). An affirmance or reversal of the refusal to declassify would not and could not in any way affect the validity of the exclusion order. Viscofan does not contend to the contrary. It sought to make the confidential information public only because it wanted to use it in a foreign court proceeding, and not because a favorable ruling on that issue would aid its challenge to the exclusion order. The Commission's refusal to declassify the confidential business information is not ancillary to our review of Viscofan's challenges to paragraph 3 of the Commission's order. *Cf.*

*Refractarios Monterrey, S.A. v. Ferro Corp.*, 606 F.2d 966, 67 CCPA 153, 203 USPQ 568 (1979), *cert. denied,* 445 U.S. 943, 100 S.Ct. 1338, 63 L.Ed.2d 776, 205 USPQ 488 (1980). *Duracell, Inc. v. United States International Trade Commission,* 778 F.2d 1578, 228 USPQ 187 (Fed.Cir. 1985).

We express no view on what court, if any, would have jurisdiction to review the Commission's refusal to declassify. We hold only that under our narrow jurisdiction to review Commission determinations, we do not have that authority.

### CONCLUSION

Paragraph 3 of the Commission's order is affirmed. Insofar as the petition to review challenges the Commission's refusal to declassify confidential material, it is dismissed.

AFFIRMED IN PART and DISMISSED IN PART.