# United States Court of Appeals for the Federal Circuit

---

**LAERDAL MEDICAL CORP., LAERDAL MEDICAL AS,**
*Appellants*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

---

2017-2445

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-1008.

---

Decided: December 7, 2018

---

JEFFREY I. KAPLAN, Kaplan, Breyer, Schwarz, LLP, Matawan, NJ, argued for appellants. Also represented by JOSEPH W. BAIN, Shutts & Bowen LLP, West Palm Beach, FL.

ROBERT JOHN NEEDHAM, Office of the General Counsel, United States International Trade Commission, Washington, DC, argued for appellee. Also represented by DOMINIC L. BIANCHI, WAYNE W. HERRINGTON.

---

Before LOURIE, O'MALLEY, and STOLL, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Laerdal Medical Corp. and Laerdal Medical AS (collectively, "Laerdal") appeal from the U.S. International Trade Commission's final determination denying Laerdal relief based on claims of trade dress infringement against defaulting respondents. *Certain Carbon Spine Board, Cervical Collar, CPR Masks and Various Med. Training Manikin Devices*, USITC Inv. No. 337-TA-1008 (June 14, 2017). After instituting an investigation during which the named parties failed to participate and were deemed to be in default, the Commission concluded that Laerdal's trade dress allegations had not been adequately pleaded, and therefore, denied Laerdal any remedy against the named parties.

We conclude that the Commission erred in reassessing the sufficiency of Laerdal's complaint against defaulting respondents post-institution and in failing to assess the appropriate remedy to impose under the circumstances. We, therefore, reverse the Commission's determination as to Laerdal's trade dress claims and vacate and remand for the Commission to determine the proper remedy.

## I. BACKGROUND

Laerdal is a manufacturer and distributor of medical devices, medical training products, and manikins. J.A. 2159, 2333. On March 21, 2016, Laerdal filed a complaint at the U.S. International Trade Commission (the "Commission") asserting violations of 19 U.S.C. § 1337 by eleven respondents. Laerdal amended its complaint on May 18, 2016 and filed a supplement to the amended complaint on June 7, 2016. J.A. 2358.

Laerdal's complaint, as amended and supplemented, alleged that the respondents were infringing Laerdal's patent, trademark, trade dress, and copyright rights by

importing, selling for importation, or selling within the United States certain spine boards, cervical collars, CPR masks, training manikins, and accompanying product literature. J.A. 2140–261. Laerdal sought a general exclusion order covering the various infringing products, a limited exclusion order "as an addition, or in the alternative" to the general exclusion order, and a cease and desist order directed to each respondent. J.A. 2259–60.

On June 2, 2016, in response to the complaint, the Commission's Office of Unfair Import Investigations ("Staff") requested supplemental information on certain of Laerdal's allegations related to one asserted patent and three asserted trademarks. J.A. 2349–50. Laerdal provided the requested information on June 7, 2016 and requested that, if the additional evidence was insufficient, the Commission institute an investigation as to the remaining patent, trademark, trade dress, and copyright allegations. J.A. 2353–57. Thirteen days later, the Commission did exactly that, instituting an investigation on some, but not all, of Laerdal's claims. Specifically, the Commission instituted an investigation on Laerdal's trade dress claims, one patent claim, two copyright claims, and one trademark claim, excluding all others. J.A. 2358–62.

Despite being served with the amended complaint and notice of investigation, no respondent submitted any response, appeared, or otherwise participated in any way in any of the proceedings. J.A. 2478–99. On October 20, 2016, therefore, Laerdal moved for an order requiring Respondents to show cause why they should not be found in default under § 1337(g)(1). J.A. 2550–59. The Administrative Law Judge ("ALJ") granted Laerdal's motion and issued the Order to Show Cause on November 7, 2016. J.A. 2584–86. Respondents again failed to respond to or acknowledge that order. Two weeks later, the ALJ issued an initial determination finding all respondents in default. J.A. 2589–95.

On December 1, 2016, in response to the ALJ's initial determination, Laerdal modified its requested relief from a general exclusion order to "immediate entry of limited exclusion orders (and cease and desist orders, where appropriate) against the defaulting Respondents." J.A. 2599.

The Commission ultimately determined not to review the ALJ's initial determination finding all respondents in default and requested that Laerdal and the Staff provide briefing on remedy, the public interest, and bonding, and submit proposed remedial orders. J.A. 2609–12. The Commission did not request information on any other issue.

Laerdal and the Staff each responded that public interest factors did not preclude relief and requested a 100 percent bond rate, a cease and desist order against the sole domestic respondent, and limited exclusion orders directed to all respondents. J.A. 2618–25, 2629–35, 2744–52, 2778–86, 2789–95, 2796–804. Both Laerdal and the Staff, moreover, expressed that, because Laerdal satisfied the requirements of § 1337(g)(1), the Commission was required to presume the facts alleged in the complaint to be true and issue an exclusion order, cease and desist order, or both, unless such relief was precluded by public interest concerns. *See* J.A. 2621–22, 2780–81.

On June 14, 2017, the Commission issued its final determination, granting Laerdal limited exclusion orders against three respondents and a cease and desist order against one respondent, all based on Laerdal's patent and trademark claims. J.A. 1–13. The Commission issued no relief, however, on Laerdal's trade dress and copyright claims, finding Laerdal's allegations in those claims inadequate. J.A. 5–11. Specifically, the Commission concluded that, even when the pleaded facts were presumed true, Laerdal failed to show that any respondent

violated § 1337 with respect to the alleged trade dresses and copyrights.  J.A.  8, 11.

As to Laerdal's trade dress claims—the only claims at issue in this appeal—the Commission found that Laerdal failed to plead sufficiently (1) that it suffered the requisite harm, (2) the specific elements that constitute its trade dresses, and (3) that its trade dresses were not functional.  J.A. 8–11.  Thus, despite approving the ALJ's initial determination finding all respondents in default and despite requesting supplemental briefing solely related to the appropriate remedy, the Commission issued Laerdal no relief on those claims or against any of the respondents named in those claims.

Laerdal appeals the Commission's termination of its trade dress claims, contending the Commission acted in violation of § 1337(g)(1) by terminating the investigation and issuing no relief for its trade dress claims against defaulting respondents.[1]  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(6).

## II. DISCUSSION

Statutory interpretation is a question of law reviewed de novo.  *Belkin Int'l, Inc. v. Kappos*, 696 F.3d 1379, 1381 (Fed. Cir. 2012); *PS Chez Sidney, L.L.C. v. U.S. Int'l Trade Comm'n*, 684 F.3d 1374, 1379 (Fed. Cir. 2012) ("[W]hether the ITC's determination was based on a proper interpretation of the [law] is a question of law which we review de novo.").

---

[1]  Laerdal also appeals the Commission's failure to provide it notice or an opportunity to amend before finding that Laerdal's trade dress allegations were pleaded insufficiently.  Because our conclusion regarding Laerdal's argument under § 1337(g)(1) is dispositive, we do not reach these questions.

Section 1337(g), titled "Exclusion from entry or cease and desist order; conditions and procedures applicable," provides, in relevant part:

If—

(A) a complaint is filed against a person under this section;

(B) the complaint and a notice of investigation are served on the person;

(C) the person fails to respond to the complaint and notice or otherwise fails to appear to answer the complaint and notice;

(D) the person fails to show good cause why the person should not be found in default; and

(E) the complainant seeks relief limited solely to that person;

the Commission *shall* presume the facts alleged in the complaint to be true and *shall*, upon request, issue an exclusion from entry or a cease and desist order, or both, limited to that person unless, after considering the effect of such exclusion or order upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, the Commission finds that such exclusion or order should not be issued.

19 U.S.C. § 1337(g)(1) (emphases added).

According to Laerdal, the Commission acted outside of its statutory authority by *sua sponte* terminating Laerdal's trade dress investigation at the final determination stage based on an assessment of the adequacy of its pleadings. Under § 1337(g)(1), Laerdal asserts, once the

Commission found all respondents in default, it was required to accept all facts pleaded in the complaint as true and issue a remedy, subject only to the public interest concerns outlined above. Brief for Laerdal at 10.

The Commission responds that, even in the case of defaulting respondents, where facts alleged in the complaint must be presumed true, it must still find unlawful activity before issuing relief. Brief for Commission at 18, 22–23. The decision to institute an investigation, it argues, is not substantive approval that the complaint established a § 1337 violation. Brief for Commission at 24–25. If a complaint does not adequately plead a § 1337 violation, it argues, no relief is warranted—even if its allegations are unopposed.

We conclude that the statute, on its face, unambiguously requires the Commission to grant relief against defaulting respondents, subject only to public interest concerns, if all prerequisites of § 1337(g)(1) are satisfied. The statute's plain text, surrounding context, purpose, and legislative history, as well as the Commission's own prior decisions, support this conclusion.

Through use of the word "shall," the statute unambiguously requires the Commission to, upon finding that elements (A) through (E) are satisfied, (1) presume the facts alleged in the complaint to be true and (2) upon request, issue an exclusion order, cease and desist order, or both, subject to public interest concerns. *See SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018) (finding that the word "shall" means "must" because it "generally imposes a nondiscretionary duty"); *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."); *see also Converse, Inc. v. U.S. Int'l Trade Comm'n*, — F.3d —, 2018 WL 6164571, at *14 (Fed. Cir. Oct. 30, 2018) (O'Malley, J., concurring in part and dissenting in part) ("This language

requires the ITC to presume the facts alleged in the complaint to be true and to provide some form of relief against any parties found to be in default . . . .").

Granting the Commission discretion to issue relief under § 1337(g)(1), moreover, runs contrary to the surrounding statutory language. *See King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) ("[W]e must read the words in their context and with a view to their place in the overall statutory scheme." (internal quotation marks omitted)). In § 1337(g)(2), Congress granted the Commission discretion to issue a general exclusion order against defaulting respondents through use of the term "may." By using "shall" in subsection (g)(1), though, Congress limited the Commission's discretion in the case of petitioners seeking more limited relief—such as a limited exclusion order or cease and desist order or both—against defaulting respondents.

And, while the Commission contends that it must find a § 1337 violation properly pleaded before it can issue relief under subsection (g)(1), only subsections (d)(1) and (g)(2)—neither of which are implicated here—require that additional layer of review post-institution. Subsection (g)(2) provides that relief "may be issued if . . . such a violation is established by substantial, reliable, and probative evidence." And subsection (d)(1), which is implicated when respondents participate in the litigation, requires the Commission to determine "that there is a violation of this section" before it issues any relief. No such requirement is found in subsection (g)(1); instead, the Commission must "presume the facts alleged in the complaint to be true" and, upon request, issue relief after considering any relevant public interest concerns. *See* S. Rep. No. 100-71, at 132 (1987) (Subsection (g)(1) "authorizes the Commission to presume the facts alleged in the complaint to be true insofar as they involve a defaulting respondent, and to then issue relief limited to that respondent. . . . Relief in the form of a general exclusion

order [under (g)(2)] must be supported by a Commission determination of violations of the Act based on substantial, reliable, and probative evidence."); H.R. Rep. No. 100-576, at 636 (1988) (Conf. Rep.).

To be sure, the Commission must find a violation of § 1337 before it can issue a remedy, but that analysis in the context of the defaulting respondent occurs, by statute and through the Commission's regulatory regime, upon default. Through the pre-requisites of subsection (g)(1)— elements (A) through (E)—relief against defaulting respondents is only possible if the Commission has already determined, pre-institution, that the complaint was pleaded adequately and instituted an investigation thereof. After institution, the question of the adequacy of the pleadings is no longer a live one absent a challenge thereto by a responding party.

The Commission's rules are consistent with this understanding. Commission Rule 210.9, for example, requires that, prior to instituting an investigation, the Commission "*shall* examine the complaint *for sufficiency and compliance* with the applicable sections of this chapter." 19 C.F.R. § 210.9 (emphases added). When a notice of investigation issues, therefore, the Commission must have already ensured that the complaint sufficiently pleaded a statutory violation.

Under the pre-requisites to (g)(1), relief is both permitted and mandated only after, *inter alia*, a notice of investigation is served, implying that the Commission has completed its preliminary review and found the complaint sufficiently pleaded, and after the respondents are found to be in default. *See* 19 U.S.C. § 1337(g)(1)(B), (D). If a violation is not pleaded adequately in the complaint, the Commission can decline institution and dismiss the complaint, thereby never implicating relief under subsection (g)(1)—or any other subsection. *See* 19 C.F.R. § 210.10(c) ("If the Commission determines not to insti-

tute an investigation on the basis of the complaint, the complaint shall be dismissed, and the complainant and all proposed respondents will receive written notice of the Commission's action and the reason(s) therefor."). But the Commission may not institute an investigation and then decide post-hoc that it is dissatisfied with an unchallenged complaint upon which the investigation was predicated.

The purpose and legislative history of subsection (g)(1) confirm this conclusion. Prior to Congress's 1988 Amendment to the Trade Act, the Commission was required to find a violation under § 1337 before issuing relief against a defaulting respondent, even if the facts of the complaint were uncontested. *See Converse*, 2018 WL 6164571, at *14; *Certain Elec. Slow Cookers*, USITC Inv. No. 337-TA-42, at 7 (Mar. 15, 1979) (relying on 19 C.F.R. § 210.21(d) (1976)). A complainant, therefore, faced essentially the same burden of proof regardless of the respondent's participation. *See Converse*, 2018 WL 6164571, at *14; *see also Certain Elec. Skin Care Devices*, USITC Inv. No. 337-TA-959, 2017 WL 8683854, at *14 (Feb. 13, 2017).

In 1988, however, Congress added § 1337(g) to the statute to address default judgments, acknowledging that, without the respondent's participation, a complainant faced difficulties proving facts sufficient to establish a violation of § 1337. *See Converse*, 2018 WL 6164571, at *14; *Certain Elec. Skin Care Devices*, 2017 WL 8683854, at *14 ("The legislative history of Section 337(g) notes that the addition of the provision for 'Default Judgments' was motivated by the fact that discovery is usually difficult, if not impossible, to obtain from named respondents who have chosen not to participate in an investigation."). Through the addition of subsection (g), therefore, Congress "require[d] the Commission, in cases involving defaulting respondents, to presume the facts alleged in the complaint to be true and, upon request, to issue relief

against the defaulting respondents, unless the enumerated public interest factors . . . preclude[d] relief." S. Rep. No. 100-71, at 132; H.R. Rep. No. 100-576, at 636 (Conf. Rep.) ("[W]hen a respondent fails to appear, the ITC shall presume the facts alleged in the complaint to be true and shall, upon request, issue appropriate relief solely against that person.").

The Commission contends that its approach of reviewing pleading sufficiency prior to a final determination is consistent with district court practice, which requires a court to review a plaintiff's allegations to ensure the defaulter's liability as a matter of law. Brief for Commission at 21. But the Commission overlooks an important distinction between district court and ITC practice—the Commission must conduct a preliminary review that district courts do not, and only then may institute an investigation. Rule 55, moreover, governing default judgment in district court litigation, is unlike § 1337(g)(1); it does not *require* the court to grant relief, it grants the court discretion to "conduct hearings or make referrals" in evaluating whether to "enter or effectuate judgment." Fed. R. Civ. P. 55(b)(2). We presume that Congress was aware of the discretion granted to district courts under Rule 55 when it later drafted subsection (g) to § 1337. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation.").

Our interpretation is also supported by the Commission's own prior application of the statute. In *Certain Electric Skin Care Devices*, the Commission—referring to the same legislative history addressed above—explained that it "distinguishes between default situations, in which the remedy is governed by Section 337(g), and contested situations, in which the remedy is governed by Sections 337(d) and (f)." *Certain Elec. Skin Care Devices*, 2017 WL 8683854, at *14 n.9. The Commission clarified that "the mandatory language of [subsection (g)(1),] ('shall'), cou-

pled with the use of the coordinating conjunction 'or,' *requires the Commission to issue relief as to the defaulting respondent* in the form of three alternative choices—an exclusion order, a cease and desist order, or both—when the conditions and applicable procedures of this provision are satisfied." *Id.* at \*14 (emphasis added). And the Commission acknowledged that "the grant of this appropriate relief can be overcome only by evidence pertaining to the statutory public interest factors." *Id.* at \*14 n.9. Recognizing that its discretion lay only in determining the appropriate remedy against defaulting respondents, not in deciding whether a remedy was warranted, the Commission concluded that, since the respondents were found in default, it did not need to "address whether there [wa]s a violation of Section 337" as the "claim [wa]s deemed established based on the allegations in the complaint." *Id.* at \*7.

Here, it is undisputed that Laerdal met the prerequisites for § 1337(g)(1). The amended complaint and notice of investigation were served on all respondents, the respondents failed to respond or appear in any way and failed to show good cause why they should not be found in default, and Laerdal limited the relief it sought to exclusion orders and cease and desist orders against only the respondents. J.A. 2478–99, 2550–59, 2584–86, 2589–95, 2599, 2609–12. Subject only to public interest concerns, therefore, the Commission was required under § 1337(g)(1) to presume all facts alleged in the complaint as true and issue an exclusion order, cease and desist order, or both.

While the Commission contends that Laerdal did not properly plead a § 1337 violation in the complaint, the time for that assessment was pre-institution. Had the Commission found Laerdal's trade dress claims insufficient, it should have requested additional information or denied institution under Rules 210.9 and 210.10. In fact, that is precisely what the Commission did with respect to

certain of Laerdal's patent and trademark claims by not including them in the investigation. J.A. 2358–62. For those claims, the Staff highlighted pleading insufficiencies to Laerdal, Laerdal was provided an opportunity to supplement the complaint, and the Commission ultimately declined institution as to three of the four identified insufficiently pleaded allegations. J.A. 2349–50, 2353–57, 2358–60. As the Commission conceded during oral argument, "ideally that [same process] would have happened" with Laerdal's trade dress claims as well. Oral Arg. at 25:00, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 17-2445.mp3. Beyond improperly reaching the merits of Laerdal's trade dress claims post-institution, the Commission also raised concerns about the adequacy of those trade dress claims that neither the Staff nor the ALJ— both of whom had previously considered the claims— shared. While we question the Commission's actions in this regard, we do not reach the issue here.

Having approved Laerdal's trade dress claims without any additional questioning and instituted an investigation thereof, *see* J.A. 2358–62, the Commission cannot now, post-institution and without opposition or appearance from respondents, assert insufficient pleading as a basis for denying relief. After the respondents were found in default, the Commission was *required* to issue relief upon Laerdal's request, unless precluded by public interest concerns.

While both Laerdal and the Staff asserted that no public interest concerns precluded relief, J.A. 2618–25, 2778–86, we recognize that "the Commission has broad discretion in selecting the form, scope and extent of the remedy," and therefore, remand for the Commission to determine the appropriate remedy. *Viscofan, S.A. v. U.S. Int'l Trade Comm'n*, 787 F.2d 544, 548 (Fed. Cir. 1986).

### III. CONCLUSION

For the foregoing reasons, we reverse the Commission's determination that Laerdal failed to plead its trade dress claims with adequate detail, vacate the Commission's decision that no relief was warranted for those claims, and remand for the Commission to determine the appropriate remedy after consideration of public interest concerns, in light of Laerdal and the Staff's submissions.

**REVERSED IN PART, VACATED IN PART, AND REMANDED**

COSTS

No costs.