**CANADIAN TARPOLY CO., Petitioner,**

v.

**U. S. INTERNATIONAL TRADE COMMISSION, Respondent.**

**Appeal No. 81-5.**

· United States Court of Customs and Patent Appeals.

Feb. 5, 1981.

Fred S. Whisenhunt, Murray & Whisenhunt, Washington, D. C., for Canadian Tarpoly Co.

Christine Bliss, Washington, D. C., for International Trade Commission.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

MARKEY, Chief Judge.

Petitioner seeks a writ of mandamus against the International Trade Commission (ITC). We deny the petition.

*Background*

The matter results from an ITC Investigation No. 337–TA–54, "In the Matter of Certain Multicellular Plastic Film", conducted under sections 337 and 337a of the Tariff Act of 1930, as amended (19 U.S.C. §§ 1337 and 1337a). Sealed Air Corporation there alleged unfair methods of competition and unfair acts in the unlicensed importation into the United States of certain multicellular plastic film allegedly manufactured in a foreign country by the process covered in claims 1 and 2 of its U.S. Patent No. 3,416,984 (the '984 patent). Petitioner was not a respondent in that investigation.

Having completed its investigation on June 12, 1979, the ITC determined that: (1) claims 1 and 2 of the '984 patent were not proven invalid; and (2) the unauthorized importation and sale of film made by an infringing process has the effect or tendency to destroy or substantially injure an industry, efficiently and economically operated in the United States.

Accordingly, on June 29, 1979, the ITC ordered that:

1. Multicellular plastic film manufactured abroad in accordance with the process disclosed by claims 1 and 2 of U. S. Letters Patent 3,416,984 is excluded from entry into the United States for the remaining term of said patent . . .

. . . . .

3. That persons desiring to import multicellular plastic film into the United States may petition the [ITC] to institute such further proceedings as may be appropriate in order to determine whether the multicellular plastic film sought to be imported should be allowed entry into the United States;

4. That this order be published in the *Federal Register* and served upon each party of record in this investigation and upon . . . the Secretary of the Treasury.

As of June 29, 1979, the Secretary of the Treasury, acting through the Customs Service, has refused entry of multicellular plastic film into the United States pursuant to the ITC's exclusionary Order. 19 U.S.C. § 1337(d).

Petitioner, a Canadian corporation, manufactures summer swimming pool covers by cutting and sewing multicellular plastic film. Petitioner asserts that the film it uses is manufactured in Canada by a process not covered by claims 1 and 2 of the '984 patent. When the ITC exclusionary Order took effect, petitioner says U. S. dealers and distributors ceased to order its pool covers, causing irreparable harm.

Petitioner asserts that it became aware of the ITC Order in the early part of September, 1980, and that it contacted the ITC in the middle of that month to discuss an expedited proceeding under paragraph 3 of the Order. The ITC proffered an expedited proceeding, to begin in the first week of October. However, believing that it would suffer irreparable harm during the ITC-estimated 4½ months required for the proceeding, petitioner declined to participate in the proffered proceeding.

Instead, on November 7, 1980, petitioner filed a petition with the ITC, challenging the legality of the exclusionary Order. On December 10, 1980, the ITC denied that petition, saying that the Order was within the scope of its statutory authority and that the expedited proceeding provided for in paragraph 3 was the most appropriate way to decide whether the plastic film which petitioner wished to export to the United States was noninfringing. The ITC informed petitioner that "to obtain expedited relief it may file a petition with the [ITC] requesting the institution of a proceeding pursuant to paragraph 3 of the [Order]".

Between December 10–17, 1980, petitioner again contacted the ITC, asking whether its pool covers could enter the United States if petitioner manufactured film in the United States, shipped it to Canada for assembly of pool covers, then exported those pool covers into the United States. The ITC suggested that petitioner request an advisory opinion on that question.

Declining an expedited proceeding under paragraph 3 of the Order, petitioner filed this petition for writ of mandamus on December 17, 1980.

Petitioner asserts that the ITC Order in Investigation No. 337–TA–54 "exceeds the statutory authority" of the ITC, illegally "extends the monopoly" of the '984 patent, "is unconstitutional because it results in a taking of Petitioner's property without due process of law", and "is arbitrary and capricious and is a clear abuse of discretion."

Petitioner asks that we issue a writ of mandamus to the ITC, "directing that the said Order be vacated forthwith, at least as it applies to the Petitioner, and that the [ITC] forthwith order the appropriate Customs Officials to immediately suspend its directives which exclude from entry into the United States the multicellular plastic film of the Petitioner." [1]

1. Alternatively, petitioner requests:

(2) [T]hat an order be issued, directed to the [ITC], requiring [it]:

(a) to show cause in this Court, at a time to be designated, why [it] should not vacate the Order forthwith, at least as it applies to the Petitioner, and to show cause why [it]

## OPINION

■ Mandamus is an extraordinary remedy, available only in extraordinary circumstances and when no meaningful alternatives are available. *Kerr v. United States District Court*, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976); *Landis Tool Division v. U. S. International Trade Commission*, 614 F.2d 766, 205 USPO 112 (CCPA 1980). This court's power to issue a mandamus under the All Writs Act (28 U.S.C. § 1651(a)) is limited to situations in which such action is necessary or appropriate in aid of its jurisdiction. *Margolis v. Banner*, 599 F.2d 435, 440, 202 USPO 365, 370 (CCPA 1979).

■ There are meaningful alternative legal remedies available here. For example, petitioner could have participated, and may still participate, in the expedited proceeding proffered by the ITC pursuant to paragraph 3 of its Order. If adversely affected by a final determination in *that* proceeding, petitioner could appeal to this court. 19 U.S.C. § 1337(c). Thus, mandamus is not necessary in aid of this court's jurisdiction.[2]

Petitioner would have us misuse the writ to circumvent normal appeal procedures and permit a collateral attack upon the legality of the ITC's exclusionary Order. The Order having issued more than 60 days before any action was taken by petitioner, a direct appeal of that Order is not open to it. Efforts to obtain a court interpretation of the Order by way of the present petition

should not order the appropriate Customs Officials to suspend its directives which exclude from entry into the United States the multicellular plastic film of the Petitioner; and

(b) to immediately suspend the Order, and notify the appropriate Customs Officials of such suspension, for such time as is necessary to enable this Court to hear and determine this Petition, in order to avoid additional harm to the Petitioner.

(3) That the Petitioner have such additional relief and process as may be deemed necessary and appropriate by this Honorable Court.

The alternative requests are denied for the reasons set forth with respect to the request for writ of mandamus.

confuse the nature and purpose of mandamus with the nature and purpose of an appeal.

■ Petitioner urges that the writ of mandamus is appropriate to prevent "irreparable harm", that is, loss of sales during the time required to complete an expedited paragraph 3 proceeding and a possible appeal to this court. The argument is devoid of merit. As stated by the Supreme Court in *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953):

> [I]t is established that the extraordinary writs cannot be used as substitutes for appeals, *Ex parte Fahey*, 332 U.S. 258, 259–260, [67 S.Ct. 1558, 1559, 91 L.Ed. 2041] (1947), even though hardship may result from delay and perhaps unnecessary trial, *United States Alkali Export Assn. v. United States*, 325 U.S. 196, 202–203 [65 S.Ct. 1120, 1124–1125, 89 L.Ed. 1554] (1945); *Roche v. Evaporated Milk Assn.* [319 U.S. 21, 31, 63 S.Ct. 938, 944, 87 L.Ed. 1185 (1943)]; and whatever may be done without the writ may not be done with it. *Ex parte Rowland*, 104 U.S. 604, 617, 26 L.Ed. 861 (1882).[3]

The ITC has authority to exclude goods from entry into the United States. Upon determining that a particular act of unfair competition in importation causes an injury to domestic industry, it has authority to devise a remedy. 19 U.S.C. § 1337. In the

2. If petitioner attempts to export its pool covers into the United States, and the Customs Service bars entry, petitioner could file a protest. If its protest were denied, it could file a civil action in the U. S. Court of International Trade, which has exclusive jurisdiction over civil actions involving the exclusion of merchandise. 28 U.S.C. § 1582(a)(4). In that court action, petitioner could put into issue the legality of the ITC exclusionary Order and could raise the issue it raises here, with appeal, if necessary, to this court. 28 U.S.C. § 1541. *See* W. Herrington, International Trade Commission Patent Practice at R–1–32 (Patent Resources Group, Inc. 1979).

3. Had petitioner requested institution of a paragraph 3 proceeding when that proceeding was proffered, it may well have had a decision on the merits by this time.

light of its determination in Investigation No. 337–TA–54, and because the matter involved a patented process, there were at least two remedies available to the ITC: (1) It could exclude multicellular plastic film from importation until the foreign manufacturer's process is shown not to be an infringement; (2) It could permit importation until Sealed Air Corporation proved that the foreign manufacturer's process does infringe.[4]

Remedy (1) would risk unfairness and injury to a foreign manufacturer whose process does not infringe by denying importation during the period necessary to establish non-infringement. Remedy (2) would risk continued unfairness and injury to the domestic industry, at the hands of a foreign manufacturer whose process did infringe, during the period necessary to prove infringement.

▆▆▆ Administrative agencies have considerable latitude to shape their remedies within the scope of their statutory authority, *SEC v. Chenery Corp.*, 332 U.S. 194, 207–209, 67 S.Ct. 1575, 1582–1583, 91 L.Ed. 1995 (1947), having wide discretion in dealing with the problems entrusted to them, *FTC v. Cement Institute*, 333 U.S. 683, 726, 68 S.Ct. 793, 815, 92 L.Ed. 1010 (1948), and in determining the choice of remedy deemed adequate to cope with unlawful practices, *Jacob Siegel Co. v. FTC*, 327 U.S. 608, 611–613, 66 S.Ct. 758, 759–760, 90 L.Ed. 888 (1946), *FTC v. Mandel Bros, Inc.*, 359 U.S. 385, 392, 79 S.Ct. 818, 824, 3 L.Ed.2d 893 (1959). The relation of remedy to policy is peculiarly for the administrative agency and its special competence, *General Protective Committee v. SEC*, 346 U.S. 521, 534, 74 S.Ct. 261, 269, 98 L.Ed. 339 (1954). Moreover, as pointed out by the Supreme Court in *Buttfield v. Stranahan*, 192 U.S. 470, 493, 496, 24 S.Ct. 349, 355, 48 L.Ed. 525 (1904):

As a result of the complete power of Congress over foreign commerce, it necessarily follows that no individual has a vested right to trade with foreign nations, which is so broad in character as to limit and restrict the power of Congress to determine what articles of merchandise may be imported into this country and the terms upon which a right to import may be exercised. This being true, it results that a statute which restrains the introduction of particular goods into the United States from considerations of public policy does not violate the due process clause of the Constitution.

.    .    .    .    .

... Congress legislated on the subject [free introduction of sugar, molasses, coffee, tea and hides] as far as was reasonably practicable, and from the necessities of the case was compelled to leave to executive officials the duty of bringing about the result pointed out by the statute. To deny the power of Congress to delegate such a duty would, in effect, amount but to declaring that the plenary power vested in Congress to regulate foreign commerce could not be efficaciously exerted.

*See also California Bankers Assn. v. Schultz*, 416 U.S. 21, 59, 94 S.Ct. 1494, 1516, 39 L.Ed.2d 812 (1974).

The ITC chose remedy (1). Whether this court would have devised the same remedy is irrelevant for the purpose of determining whether the court should issue a writ of mandamus.

The petition is denied.[5]

NIES, Judge, with whom BALDWIN, Judge, joins, dissenting.

Following an investigation entitled "In the Matter of Certain Multicellular Plastic

---

4. The record does not reflect any effort by petitioner for further ITC proceedings or for entry under bond.

5. Petitioner's "Motion for Waiver of Rules and Expedited Hearing or Decision", the ITC's "Motion to Dismiss Requests for Stay and for Expedited Proceeding", the "Motion of Sealed Air

Corporation to Intervene as Party Respondent", Sealed Air's "Motion to Dismiss", the "Motion of Sealed Air for Setting of a Procedure to Respond", and the ITC's "Motion to Dismiss Petition for Writs of Mandamus and Prohibition" are rendered moot in view of our denial of the petition.

Film, Investigation No. 337–TA–54," the following order was entered:

1. Multicellular plastic film manufactured abroad in accordance with the process disclosed by claims 1 and 2 of U. S. Letters Patent 3,416,984 is excluded from entry into the United States for the remaining term of said patent except (1) as provided in paragraph 2 of this order, infra, or (2) as such importation is licensed by the owner of U. S. Letters Patent 3,416,984;

2. * * * [A provision for entry under bond of subject articles during the period, now expired, when the order was subject to disapproval by the President.]

3. That persons desiring to import multicellular plastic film into the United States may petition the Commission to institute such further proceedings as may be appropriate in order to determine whether the multicellular plastic film sought to be imported should be allowed entry into the United States.

* * * * * *

The above paragraph 3 has been implemented as follows:

[P]ersons . . . desiring to import multicellular plastic film may petition the Commission to institute further proceedings for the purpose of determining whether the film sought to be imported should be allowed entry into the United States. With respect to film produced by foreign manufacturers who were not respondents in the Commission's investigation, paragraph 3 is intended to insure that only such film found upon further investigation not to have been manufactured by a process infringing claims 1 and 2 of the '984 will be allowed entry. The effect of paragraph 3 is to place the burden of establishing noninfringement upon would-be importers rather than to require complainant, the aggrieved party in this matter, to prove infringement. [See USITC Publication 987, June 1979, pages 22–23.]

Petitioner was not named as a respondent in the above proceeding and the process it employs to manufacture plastic film has not been the subject of an ITC investigation. Relief from this order is sought on the grounds that the ITC has acted beyond its jurisdiction and authority by ordering, even temporarily, the exclusion of the products of petitioner.

I agree with petitioner that a writ of mandamus or prohibition is a proper vehicle to bring this matter before this court. Further, I find the ITC has no authority to exclude articles prior to a determination that unfair methods of competition and unfair acts in their importation exist except in accordance with 1337(e). Under 1337(d), paragraph 1 of the order must be limited to "the articles concerned" in Investigation No. 337–TA–54. Paragraph 3 should be eliminated.

*Jurisdiction of this Court*

The threshold question is whether this court can issue a writ of mandamus or prohibition under the All Writs Act, 28 U.S.C. § 1651(a), under the circumstances of this case. The All Writs Act states:

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

We have previously held that the question of whether an order is within the statutory authority of the ITC is within the appellate jurisdiction of this court. *Import Motors, Ltd. v. U. S. International Trade Commission*, 63 CCPA 57, 530 F.2d 940, 188 USPQ 491 (1976). Moreover, except for the jurisdiction of the Supreme Court, this appellate jurisdiction is exclusive. *World-Wide Volkswagen Corp. v. U. S. International Trade Commission*, 414 F.Supp. 713, 191 USPQ 626 (1976).

*Availability of Review by Writ of Mandamus or Prohibition*

The second question which must be answered is whether petitioner has raised the type of question which is appropriately a subject for mandamus action, precedent requiring that a writ of mandamus is to be employed only under extraordinary circum-

stances. See *Swindell-Dressler Corp. v. Dumbauld*, 308 F.2d 267 (CA 3 1962); *In re Josephson*, 218 F.2d 174 (CA 1 1954). Circumstances justifying the use of a writ are present when a trial court or a federal agency subject to an appellate court's review has exceeded its authority or has acted without jurisdiction, or has failed to exercise jurisdiction in a proper case. See *Ex Parte United States*, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916); *Webster Eisenlohr v. Kalodner*, 145 F.2d 316 (CA 3 1944), cert. denied, 325 U.S. 867, 65 S.Ct. 1404, 89 L.Ed. 1986 (1945); *Swindell-Dressler Corp. v. Dumbauld, supra* at 271–72.

A writ should not be used to circumvent normal appeal procedures but may be used *in aid of* appellate jurisdiction or for the purpose of reviewing conduct that is not otherwise reviewable by appeal.[1] In this case the time for appeal of the order of August 25, 1979, has expired. Further, under the procedure which the ITC has devised under paragraph 3 of its order, the basic order is not subject to attack. The issue in the paragraph 3 proceeding is limited to infringement or noninfringement.[2]

The ITC, in opposing the writ of mandamus, argues that the procedure available to petitioner under paragraph 3 is fair inasmuch as it provides petitioner with an opportunity for an expedited (i. e., less than 12 months) procedure[3] for determining whether its process would infringe the subject patent if practiced in the United States. It assumes that it may properly limit petitioner to this issue and may properly shift the burden of proof. It argues further that the exclusion may only be temporary and, thus, does not cause undue hardship.

A "post-judgment" proceeding to determine only the issue of infringement will not assist this court in its determination whether the ITC has exceeded its jurisdiction in issuance of the underlying order as to which the appeal period has expired. Accordingly, the grant of a writ of mandamus does not in this case thwart normal appeal procedures. Moreover, where the issue is of significant importance in the overall functioning of the tribunal below, not merely in the case at hand, *La Buy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 560 (1957), is precedent for exercise of this discretionary power when the opportunity is presented.

Apart from the showing necessary to establish that petitioner has standing and is aggrieved by the ITC order, which I find has been adequately established here by affidavits,[4] no evidentiary material is needed to determine whether the ITC order is invalid on its face. Accordingly, the question is reached as to the validity of the order.

*The ITC Exclusion Authority*

The ITC is an independent agency of the Government performing a mix of legislative, executive and judicial functions. Like any other administrative agency or board, it is entirely the creature of statute. *Civil Aeronautics Board v. Delta Air Lines, Inc.*, 367 U.S. 316, 81 S.Ct. 1611, 6 L.Ed.2d 869 (1961); *Soriano v. United States*, 494 F.2d 681 (CA 9 1974). Any authority delegated or granted to an administrative agency is necessarily limited to the terms of the delegating statute. As Chief Justice Warren succinctly stated in *Civil Aeronautics*

---

1. See *United States v. Weinstein*, 452 F.2d 704, 711–13 (1971), where Judge Friendly holds that a writ of mandamus is not necessarily limited to cases where an existing or potential appeal would be frustrated.

2. The ITC submission here includes a notice of investigation of another third party process which includes a specific statement that the determination shall be limited to the question of whether the process would infringe claims 1 or 2 of patent '984, if practiced in the United

States. (For convenience, this is referred to as "infringement".)

3. In another case with a stipulated record, it is estimated that the expedited procedure will take 4½ months. No assurance was given to petitioner as to the time involved.

4. Petitioner asserts that the selling periods for its products are seasonal and it will lose a full year's contracts unless it is allowed to import at this time.

*Board, supra,* 367 U.S. at 322, 81 S.Ct. at 1617, "[T]he determinative question is not what the Board thinks it should do, but what Congress has said it can do."

Section 1337(d) provides:

If the Commission determines, as a result of an investigation under this section, that there is a violation of this section, it shall direct that the articles concerned, imported by any person violating the provision of this section, be excluded from entry into the United States.

In Investigation No. 337–TA–54 the ITC noticed for investigation unfair acts in the importation of articles manufactured by certain named companies. No determination has been made that any unfair methods of competition are involved in the importation of products of Canadian Tarpoly, nor have the acts of those determined to have violated the statute been shown to be attributable to petitioner.[5] Appropriate findings as to products of petitioner are a condition precedent to their exclusion under 1337(d).[6]

Further, 1337(c) specifically states that:

Each determination under subsection (d) . . . of this section shall be made on the record after notice and opportunity for a hearing in conformity with the provisions of subchapter 2 of Chapter 5 of Title 5. All legal and equitable defenses may be presented in all cases.

The ITC is apparently under the misconception that the finding in the investigation leading to the issuance of the exclusion order of August 25, 1979, that Patent '984 is not invalid eliminates the necessity to reconsider that issue in the future. This is error. In denying petitioner the right to question validity, petitioner has been denied rights specifically afforded by the above quoted provisions of 1337(c). Petitioner is further judged to be in violation of the Act until it proves compliance. The imposition of such a burden of proof may well determine the outcome of litigation, and in my view this burden has been improperly placed on petitioner who is being treated differently from the named respondents in the investigation which led to the order, without justification or explanation. This attempt to shift the burden is proscribed by the Administrative Procedures Act 5 U.S.C.

---

5. The determinations of violations were based on default by Unipak and Conform, over whom the ITC asserts *in personam* jurisdiction. Unipak has appealed this determination. Appeal No. 80–4.

6. From the legislative history, it is beyond question that the words "the articles concerned, imported by any person . . ." were inserted to avoid the result here. See 62 Cong. Rec. 11241–244 (1922), which contains the following discussion:

MR. LENROOT. [Senator from Wisconsin, later Associate Judge, United States Court of Customs and Patent Appeals, 1929–1944.] * * * So, under the amendment now proposed, if one importer has indulged in unfair competition, and a finding to that effect is sustained and reported to the President, because one importer has been guilty of wrongdoing the President may fix rates from 10 to 50 per cent ad valorem upon all merchandise, either of that character or any different character.

MR. REED, Let me ask the Senator whether, in the case he has just put, it would not be much wiser if we provided penalties to be visited upon the particular importer who violated the proper practices, and reach it in that way, instead of reaching it by excluding everybody?

MR. LENROOT. I think that is the way to reach it. The Senator from Utah has just called my attention to one of the amendments which is intended to be proposed, which will limit it to merchandise imported in violation of this act. Do I understand from the Senator from Utah, then, that it will not be a general rate imposed upon all merchandise but will be a rate imposed upon merchandise imported by a given individual who is guilty of violation of the act?

MR. SMOOT. That is all there is to it, Mr. President. The criticism the Senator has just offered to the original paragraph is absolutely correct. Under that, if there had been one violation the President could have imposed the extra duty upon all importations, by any and every person, of that kind of merchandise, and that is why the committee is going to offer this amendment.

MR. LENROOT. I am very frank to say that that very greatly improves the section.

At that time the President issued the order following an investigation by the Tariff Commission [predecessor of the ITC] and had the authority to order either additional duties or refusal of entry.

§ 556(d) (APA) and the Commission's own rules.[7]

If the ITC or Sealed Air, the original complainant, wishes to effect a temporary exclusion of the products of Canadian Tarpoly while the infringement question is under consideration, it must do so in accordance with 1337(e). Under that section Congress has provided additional protection for a person in the position of petitioner. One whose products are affected by an exclusion order during the pendency of an investigation is entitled to entry of its goods under bond.

I find the creation of a proceeding of the nature described in paragraph 3 *ultra vires* of the authority of the ITC.

*The View of Majority*

The majority states that there are at least two "meaningful legal remedies" available to petitioner here without resort to mandamus. The first is the paragraph 3 procedure for determination of the sole issue of infringement, which I have previously discussed.

As a second, the majority suggests that petitioner secure an appealable judgment from the U. S. Court of International Trade by making a shipment of its pool covers to the United States, and, assuming the articles are refused entry, filing a protest with Customs and, assuming that is refused, instituting proceedings before the Court of International Trade (formerly the U. S. Customs Court), and then appealing to this court. I cannot agree with the majority that the availability of a collateral attack on an ITC order by this contrived action against acts of Customs cures the deprivation of a right of direct appeal to this court, given to petitioner under 19 U.S.C. § 1337(c) and which the scope of the order has effectively precluded.[8]

Clearly, petitioner is adversely affected by a *final order* of the ITC which is devised to preclude one in the position of petitioner from raising substantive appealable issues and has been denied relief therefrom. The use of mandamus authority will do no more than preserve the full appellate jurisdiction of this court.

The majority treats the question here simplistically as one involving the exercise of discretion by the Commission in choosing between two legal remedies, one of which better protects the interests of U. S. industry and, thus, reasonably was chosen. It is not. The question is whether the chosen remedy is within the Commission's statutory authority. The majority divorces the Commission's authority to issue exclusionary orders from the express limitation in 1337(d) that a determination of violation must precede its direction that *the articles concerned* be excluded from entry. Appropriate findings as to *the articles concerned* in this petition have not been made and the articles, thus, cannot be excluded by an order under 19 U.S.C. § 1337(d).

The majority's reliance on *Buttfield v. Stranahan*, 192 U.S. 470, 24 S.Ct. 349, 48 L.Ed. 525 (1904), is misplaced. The issue here is not whether the statute is a valid exercise of Congress' plenary power over foreign commerce and whether that power has been properly delegated to the ITC. The issue is whether the ITC has acted in accordance with its statutory mandate. I find that it has not.

Finally, the majority's interpretation of the statute is irreconcilable with the minimum standards set forth in the APA which has been specifically made applicable to ITC adjudications. The APA requires notice, hearing, and findings prior to imposition of a sanction. That the order or effect may be

---

7. The complainant has the burden of proof of infringement under 19 CFR 210.42(a). Cf. *Exxon Corp. v. F. T. C.*, 411 F.Supp. 1362, 1379 (D.C.Del.1976). The ITC has no *published* rules pertaining to a paragraph 3 type proceeding.

8. 19 U.S.C. § 1337(c) reads in part:

> Any person adversely affected by a final determination of the Commission under subsection (d), (e), or (f) of this section may appeal such determination to the United States Court of Customs and Patent Appeals.
>
> In *Import Motors, Ltd. v. U. S. International Trade Commission*, 63 CCPA 57, 530 F.2d 940, 188 USPQ 491 (1976), this court indicated that appeal rights are not limited to parties below.

temporary or only an initial determination does not make it sustainable. Cf. *Ligon Specialized Hauler Inc. v. I. C. C.* 587 F.2d 304, 315–20 (CA 6 1978).