850 F.2d 1573
 10 ITRD 1385, 57 USLW 2083, 7
U.S.P.Q.2d 1303,
6 Fed. Cir. (T) 138
 ALLIED CORPORATION, Appellant,
v.
UNITED STATES INTERNATIONAL TRADE COMMISSION, Appellee,
and
Hitachi Metals, Ltd., et al., Vacuumschmelze GmbH, Nippon
Steel Corporation, et al., and Siemens Capital
Corp., Intervenors/Appellees.
 Appeal Nos. 87-1455, 87-1616.
 United States Court of Appeals,
Federal Circuit.
 June 29, 1988.
As Amended on Denial of Rehearing Aug. 25, 1988.
 
 David W. Plant, Fish & Neave, New York City, argued for appellant Allied. With him on the brief were David J. Lee, Eric M. Lee, Christopher B. Garvey and Robert A. Musicant. Also on the brief were Brian D. Forrow and David M. McConoughey, Allied Corp., Morristown, N.J., of counsel.
 Jean H. Jackson, Office of the Gen. Counsel, U.S. Intern. Trade Com'n, Washington, D.C., argued for appellee ITC. With her on the brief were Lyn M. Schlitt, Gen. Counsel and James A. Toupin, Asst. Gen. Counsel.
 Thomas J. Macpeak, Sughrue, Mion, Zinn, Macpeak & Seas, Washington, D.C., argued for intervenor Hitachi. With him on the brief were Waddell A. Biggart and Sheldon I. Landsman. Also on the brief were Alan J. Neuwirth, Michael Doherty and Richard Mescon, Webster & Sheffield, New York City, of counsel.
 John D. Simpson, Hill, Van Santen, Steadman & Simpson, Chicago, Ill., argued for intervenor Vacuumschmelze. With him on the brief was Steven H. Noll. Also on the brief was Tom Schaumberg and Alice Kipel, Howrey & Simon, Washington, D.C., of counsel.
 Thomas L. Creel, Kenyon & Kenyon, of New York City, argued for intervenor Nippon. With him on the brief were Edward W. Greason, Robert T. Tobin, Philip J. McCabe, John J. Kelly, Jr. and Richard M. Rosati.
 Before MARKEY, Chief Judge, DAVIS* and ARCHER, Circuit Judges.
 MARKEY, Chief Judge.
 
 
 1
 Consolidated appeals from an Advisory Opinion of the United States International Trade Commission (ITC), Investigation No. 337-TA-143 (May 28, 1987) (Appeal No. 87-1455), and from a Modified General Exclusion Order, Id. (June 17, 1987) (Appeal No. 87-1616). We dismiss the appeal from ITC's Advisory Opinion for lack of jurisdiction and affirm the Modified General Exclusion Order.[1]
 
 BACKGROUND
 
 2
 These appeals arise out of further developments in the 1983-84 ITC Investigation No. 337-TA-143, In the Matter of Certain Amorphous Metals and Amorphous Metal Articles. See USITC Publication 1664 (Nov. 1984); 49 Fed.Reg. 42803 (October 24, 1984).
 
 A. The 1983-84 Investigation
 
 3
 On March 11, 1983, ITC commenced Section 337 proceedings (19 U.S.C. Sec. 1337 (1982 & Supp.1984)) against several importers of steel products, including parties to this action Hitachi Metals Ltd. (HML), Nippon Steel Corporation (NSC), Vacuumschmelze GmbH (VAC) and Siemens Capital Corp. (Siemens). In part, ITC investigated whether the processes used to make the imported products would infringe Allied Corporation's (Allied's) U.S. Patent No. 4,271,257 (the '257 patent) on a "method of forming continuous strip of amorphous metal" if such processes were carried out in the United States. ITC referred the investigation to an administrative law judge (ALJ) to conduct an evidentiary hearing and to issue an initial determination (ID).
 
 
 4
 The ID issued May 14, 1984. The ALJ construed the claims and determined that all respondents except HML had violated Sec. 337 and Sec. 337(a) by importing amorphous metal articles made by processes which would infringe the '257 patent if such processes were practiced in the United States.
 
 
 5
 Before the ALJ, respondents argued that the '257 claims were "fatally indefinite and ambiguous" (35 U.S.C. Sec. 112) and that the invention recited in those claims would have been obvious in light of the prior art (35 U.S.C. Sec. 103). Both arguments were rejected, however, because the ALJ interpreted the word "nozzle" as including the feature of wide lips.
 
 
 6
 It is found that the word 'nozzle' as used in the '257 patent claims is ambiguous as to the structure of the nozzle, and that the specification can be used to construe this word. The '257 claims are construed as including the critical feature of the wide lips on the nozzle.
 
 
 7
 Inv. No. 337-TA-143, Initial Determination 44 (May 14, 1984) [hereinafter 1984 ID].
 
 
 8
 The ALJ left no doubt as to her interpretation of the scope of the '257 patent's claims:
 
 
 9
 If the claims of the '257 patent are valid, it is only because the critical limitation relating to the width of the lips was read into the claims. If a respondent used a nozzle without wide lips, infringement could not be found.
 
 
 10
 Id. at 64.
 
 
 11
 Respondents and Allied petitioned the Commission for review. Respondents contended that the ALJ erroneously "preserved" the validity of the '257 patent by "reading in the limitation concerning wide lips." In response, Allied took the position that no review of the ALJ's claim construction and validity holdings was necessary.
 
 
 12
 The ALJ found the word "nozzle" to be ambiguous and used the patent specification to construe this word to include "wide lips." The fault is not with the decision of the ALJ, but with the obvious mischaracterization of that holding by Respondents. No review of this issue is necessary. (Emphasis in original)
 
 
 13
 Allied went so far as to urge that the ALJ correctly construed "nozzle" to include the wide lips limitation.
 
 
 14
 [T]he ALJ has correctly found that "[t]he '257 claims are construed as including the critical feature of the wide lips on the nozzle." The ALJ did not read Dr. Narasimhan's melt constraint or support theory into the '257 process claims.
 
 
 15
 In its petition for review, and in its response to respondents' petition for review, Allied argued that "the holding by the ALJ concerning the validity of the '257 claims when read literally is in error." At no point did Allied contend that the claim construction pertaining to "wide lips" was error.
 
 
 16
 ITC declined to review the ID, making it final. 19 C.F.R. Sec. 210.53(h) (1988).[2] On August 1, 1985, ITC issued this Amorphous Metal Exclusion Order:
 
 
 17
 Amorphous metal articles manufactured abroad in accordance with the process set forth in claims 1, 2, 3, 5, 8, and/or 12 of U.S. Letters Patent 4,221,257 are excluded from entry into the United States for the remaining term of said patent....
 
 B. The 1985-87 Proceedings
 
 18
 In early 1985 ITC granted petitions for advisory opinion proceedings filed by HML and VAC who sought advice that the importation of amorphous metal products made by their "newly developed" processes would not violate the Amorphous Metal Exclusion Order or section 337. See 19 C.F.R. Sec. 211.54(b) (1988). ITC sua sponte initiated exclusion order modification proceedings, see 19 U.S.C. Sec. 337(h); 19 C.F.R. Sec. 211.57, with HML, VAC, NSC and Siemens as parties. The advisory opinion and exclusion order modification proceedings were consolidated for hearing.
 
 
 19
 On March 3, 1986, the ALJ issued an initial advisory opinion (IAO) and recommended determination (RD) on modification of the exclusion order. In the IAO and RD, the ALJ determined that the "new" HML and VAC processes did not infringe the '257 patent claims as interpreted by ITC in the original investigation, and recommended modification, accordingly, of the exclusion order. Allied petitioned ITC to review the ALJ's IAO and RD.
 
 1. Advisory Opinion
 
 20
 On May 28, 1987, ITC issued its advisory opinion, which supplemented and modified the ALJ's IAO, but did not change its result. In particular, ITC stated:
 
 
 21
 We reject Allied's arguments for redetermining the scope and validity of the '257 patent claims. Under the doctrine of law of the case ... that decision should continue to govern the same issues in subsequent stages in the same case.
 
 
 22
 ....
 
 
 23
 Apart from the application of law of the case to these proceedings, we note that Allied agreed not to litigate the issue of claim interpretation in the advisory opinion proceedings. Indeed, at the end of the original investigation, Allied embraced the claim interpretation necessary to preserve the '257 patent's validity in the original investigation.
 
 
 24
 Investigation No. 337-TA-143, Advisory Opinion Proceeding, Views of the Commission at 11-12 (May 28, 1987) (footnotes omitted).
 
 
 25
 Citing the earlier claim construction of "nozzle" to include a "wide lips" limitation as recited in the specification, ITC "construe[d] the wide nozzle lips to be of the dimensions set forth in the 'Summary of the Invention' set forth in the '257 patent specification." Id. at 15.[3] ITC concluded that: "in order for respondents' processes to literally infringe the claims of the '257 patent, they must utilize a front casting nozzle lip that is at least 1.45 times as wide as the width of the casting nozzle's slot." Id. at 15-16.[4] ITC expressly refrained from determining the upper range of nozzle lips that would fall within the scope of the claims. Id. at 15. ITC also found that there was no infringement under the doctrine of equivalents.
 
 2. Modified Order
 
 26
 On June 17, 1987, ITC issued an order modifying its Amorphous Metal Exclusion Order of August 1, 1985. In the Modified Order, paragraph 1 repeated the claim construction set out in the advisory opinion, and paragraphs 3 and 4 set out procedures to be followed by those desiring to import articles "covered" by the order:
 
 
 27
 3. Persons desiring to import amorphous metal articles covered by paragraph 1 of this Order may petition the Commission to institute such further proceedings as may be appropriate in order to determine whether the amorphous metal articles sought to be imported fall outside the scope of paragraph 1 of this Order, and therefore should be allowed entry into the United States.
 
 
 28
 4. Persons desiring to import amorphous metal articles covered by this Order shall certify to the U.S. Customs Service that the amorphous metal articles sought to be imported were manufactured by a process that the U.S. International Trade Commission has determined to be outside the scope of paragraph 1 of this Order....[5]
 
 
 29
 Allied appealed from the Advisory Opinion and from the Modified Exclusion Order.
 
 ISSUES
 
 30
 (1) Whether this Court has jurisdiction over either appeal.
 
 
 31
 (2) Whether Allied abandoned its right to challenge ITC's claim construction.
 
 
 32
 (3) Whether ITC's finding of noninfringement under the doctrine of equivalents is supported by substantial evidence.[6]
 
 OPINION
 I. Jurisdiction
 A. Statutory Framework
 
 33
 Under 28 U.S.C. Sec. 1295(a)(6) (1982) this court has exclusive jurisdiction over "the final determinations of the United States International Trade Commission relating to unfair practices in import trade, made under section 337 of the Tariff Act of 1930 (19 U.S.C. 1337)." The "final determinations" appealable to this court are specified in section 337(c) (Supp.1984):
 
 
 34
 The Commission shall determine, with respect to each investigation conducted by it under this section, whether or not there is a violation of this section.... Any person adversely affected by a final determination of the Commission under subsection (d), (e), or (f) of this section may appeal such determination, within 60 days after the determination becomes final, to the United States Court of Appeals for the Federal Circuit for review in accordance with chapter 7 of Title 5. Notwithstanding the foregoing provisions of this subsection, Commission determinations under subsections (d), (e), and (f) of this section with respect to its findings on the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, the amount and nature of bond, or the appropriate remedy shall be reviewable in accordance with section 706 of Title 5.
 
 Section 337(d) reads:
 
 35
 (d) Exclusion of articles from entryIf the Commission determines, as a result of an investigation under this section, that there is a violation of this section, it shall direct that the articles concerned ... be excluded from entry into the United States, unless, after considering the effect of such exclusion upon the public health and welfare ... it finds that such article should not be excluded from entry.
 
 Section 337(h) is also of interest here:
 
 36
 (h) Period of Effectiveness
 
 
 37
 Except as provided in subsections (f) and (g) of this section, any exclusion from entry or order under this section shall continue in effect until the Commission finds ... that the conditions which led to such exclusion from entry or order no longer exist.
 
 B. Advisory Opinion
 
 38
 That an agency may choose to render advisory opinions cannot create for one displeased with its advice a cause of action cognizable in an Article III court. A federal court's jurisdiction is limited to that conferred by Congress. See Palmore v. United States, 411 U.S. 389, 401-402, 93 S.Ct. 1670, 1678, 36 L.Ed.2d 342 (1973); Sundback v. Blair, 47 F.2d 378, 380, 18 C.C.P.A. 1016, 8 USPQ 220, 222 (1931) (rules of administrative agency alone cannot confer appellate jurisdiction); see also Arctic Corner, Inc. v. United States, 845 F.2d 999, 1001 n. 2 (Fed.Cir.1988).
 
 
 39
 ITC Advisory Opinions (19 C.F.R. Sec. 211.54(a), (b) (1987)) are not reviewable by this court because they are not "final determinations" required by sections 337(c) and 1295(a)(6). Section 211.54(c) provides that "[t]he Commission may at any time reconsider ... any advice given under this section and, where the public interest requires, rescind or revoke its prior ... advice." ITC's published comments on Sec. 211.54 state: "Since ... advisory opinions are not binding, they are not final orders and therefore not appealable." 46 Fed.Reg. 17,526, 17,527 (March 18, 1981) (citing Floersheim v. Weinburger, 346 F.Supp. 950 (D.D.C.1972)) [hereinafter ITC Comments].
 
 
 40
 ITC's attempt here to create a distinction between determinations under Sec. 211.54 that are "truly advisory," because they do not result from "formal proceedings of the APA type," and determinations under Sec. 211.54 that are not "truly advisory," because they result from proceedings that "effectively determine[ ] [an issue] as a final matter," is disingenuous, as is its assertion that the Customs Service treats ITC advisory opinions as binding. This court's jurisdiction cannot be made to turn upon such manipulatable criteria.
 
 
 41
 What counts in determining our jurisdiction is not the nature or thoroughness of the agency proceeding, but the effect of the agency determination. We reject the notion that an agency may issue what it calls "advisory" opinions and attempt to make some appealable and some not appealable on the basis of its selection among types of proceedings, or on the basis of how those opinions are treated by other agencies such as the Customs Service. If ITC wants one of its pronouncements to have effect as a final determination, it knows how to accomplish that objective without issuing opinions that may or may not be "truly advisory."[7] Put simply, the lack of finality, inherent in the word "advisory" and set out in Sec. 211.54(c) itself, dooms review. Cf. Block v. United States Int'l Trade Comm'n, 777 F.2d 1568, 1571, 228 USPQ 37, 38-39 (Fed.Cir.1985) (rejecting ITC argument that terminating investigation is in effect a final determination).
 
 
 42
 ITC's reliance on Canadian Tarpoly Co. v. United States International Trade Commission, 640 F.2d 1322, 1325, 68 C.C.P.A. 121, 209 USPQ 33, 35 (1981), is misplaced, for it does not support ITC's theory that some of its "advisory opinions" are appealable. Canadian Tarpoly was a petition for mandamus case involving an original exclusion order that, like the present Modified Order, and unlike the Amorphous Metal Exclusion Order, expressly provided for a subsequent proceeding to determine whether importation of a particular product would be allowed. An affirmative answer in that subsequent proceeding would automatically modify the existing exclusion order. Nothing in Canadian Tarpoly dealt with "advisory opinions" or Sec. 211.54. Indeed, as there set out, petitioner declined ITC's suggestion that it seek an advisory opinion.[8]
 
 
 43
 Because we hold that this court has not been granted statutory authority to review ITC advisory opinions, we need not discuss the "case or controversy" provision of Article III of the Constitution. See Ellis v. Brotherhood of Ry., Airline & S.S. Clerks, 466 U.S. 435, 444, 104 S.Ct. 1883, 1890, 80 L.Ed.2d 428 (1980); Rescue Army v. Municipal Court, 331 U.S. 549, 568-74, 67 S.Ct. 1409, 1419-22, 91 L.Ed. 1666 (1947).
 
 C. The Modified Exclusion Order
 
 44
 NSC argues in a motion to dismiss that "this court has no jurisdiction to hear appeals from a modified exclusion order" because: (1) Sec. 337(c) limits our review to ITC determinations under sections 337(d), (e), or (f); (2) authority for exclusion order modification proceedings is found in Sec. 337(h); (3) Sec. 337(d) is "completely silent as to exclusion order modification proceedings"; and (4) Sec. 337(c) puts a 60-day limit on appeals.
 
 
 45
 NSC further argues that although this court "in specific procedural contexts has addressed appeals involving modified exclusion orders or arguably has stated it could do so," "all such cases were decided prior to the amendments to 19 U.S.C. Sec. 1337 ... placing a 60 day time limit on appeals from final determinations of the ITC."[9]
 
 
 46
 NSC's reading of Sec. 337(c) is too restrictive in requiring a specific statutory provision for review of Modified Orders when the statute provides for review of original orders. NSC's view disregards the general rule that judicial review will not be precluded on the sole ground that specific procedures for judicial review of a particular agency action are not spelled out in a statute. Traynor v. Turnage, --- U.S. ----, 108 S.Ct. 1372, 1378, 99 L.Ed.2d 618 (1988); Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 670, 106 S.Ct. 2133, 2136, 90 L.Ed.2d 623 (1986) ("strong presumption that Congress intends judicial review of administrative action"); Fausto v. United States, 783 F.2d 1020, 1022 (Fed.Cir.1986), rev'd on other grounds, --- U.S. ----, 108 S.Ct. 668, 673, 98 L.Ed.2d 830 (1988) (finding contrary Congressional intent); Rosano v. Department of the Navy, 699 F.2d 1315, 1318 n. 13 (Fed.Cir.1983); see also B. Mezines, J. Stein & J. Gruff, Administrative Law Sec. 44.02 (1987 revision).[10] NSC cites no showing of " 'clear and convincing evidence' of a contrary legislative intent," Abbott Laboratories v. Gardner, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), and we are aware of none.
 
 
 47
 The statutory scheme of section 337 and its accompanying legislative history evidence that Congress did not intend that NSC's overly restrictive view govern judicial review of final determinations on the merits made by ITC under sections (d), (e), and (f). See H.Rep. No. 571, 93rd Cong., 1st Sess. 78 (1974) ("Any order of the Commission entered in any proceeding would be subject to judicial review in the CCPA") (quoted in LSI Computer Sys. v. United States Int'l Trade Comm'n, 832 F.2d 588, 590 (Fed.Cir.1987)); S.Rep. No. 1298, 93rd Cong., 2d Sess. 196-97 (1974), reprinted in 1974 U.S.Code Cong. & Admin News 7186, 7329 ("under section 337(c) the Committee would extend the right to judicial review of final Commission determinations (of whether there is a violation of section 337 or whether there is reason to believe there is a violation)"); see also SSIH Equip. S.A. v. United States Int'l Trade Comm'n, 673 F.2d 1387, 1390 n. 9 (CCPA 1982) (Sec. 1337(c) is "expansive statement of reviewable determinations"); ITC Comments at 17526 ("[A]ctions construable as final Commission actions under the rules, such as substantive modifications to cease and desist orders and the entry or removal of exclusion orders, would be reviewable before the [CCPA]").
 
 
 48
 ITC finds authority to modify an existing exclusion order in Sec. 337(h), see 5 C.F.R. Sec. 211.57 (1987); cf Young Engineers v. United States Int'l Trade Comm'n, 721 F.2d 1305, 1312-13, 219 U.S.P.Q. 1142, 1148-49 (Fed.Cir.1983); yet when it actually modifies that order and issues the modified order it is making an appealable final determination under subsection (d), (e), or (f). The order modifying the existing order inherently relates to the propriety of the exclusion order and affects its validity. See Viscofan, S.A. v. United States Int'l Trade Comm'n, 787 F.2d 544, 552, 229 USPQ 118, 124 (Fed.Cir.1986). The result is the same as that which would prevail if ITC had issued the modified order in the first instance.
 
 
 49
 The lure of NSC's simplistic reading of the statute evaporates when one realizes that the exclusion and cease-and-desist remedies of sections (d), (e), or (f) come into play only when an investigation has resulted in a finding that section 337(a) has been violated. Under NSC's narrow reading of the statute, a final order refusing to exclude an import because the patent was held invalid would not be appealable. That result would be contrary to the expressed intent of section 337(c). See S.Rep No. 1298, supra; see also Surface Technology, Inc. v. United States Int'l Trade Comm'n, 801 F.2d 1336, 231 U.S.P.Q. 192 (Fed.Cir.1986) (reviewing ITC determination of no violation of Sec. 337); Lannom Mfg. Co. v. United States Int'l Trade Comm'n, 799 F.2d 1572, 231 USPQ 32 (Fed.Cir.1986).
 
 
 50
 The 1984 amendment to section 337(c) mandating a 60-day time limit on appeals from final determinations under subsections (d), (e), or (f), has no effect on our jurisdiction here. Because the Modified Order is itself a final determination under subsection (d), Allied's appeal was timely. It is irrelevant that the appeal was more than 18 months after publication of ITC's Amorphous Metals Exclusion Order. See Young Engineers, 721 F.2d at 1312, 219 USPQ at 1149 (12 (or 18) month rule of Sec. 337(b) "means only [that] the conclusion that there is a violation or no violation of Sec. 337(a)" must be made within that time period).
 
 II. Abandonment
 
 51
 Allied abandoned review of the claim construction in the ALJ's 1984 ID by failing to raise the issue in its petition for review of that ID. See Warner Bros. v. United States Int'l Trade Comm'n, 787 F.2d 562, 564, 229 USPQ 126, 127 (Fed.Cir.1986). Allied's effort to now litigate its claim construction issues is improper.
 
 
 52
 ITC's rules require a concise statement of the reasons why review of the ID is necessary, 19 C.F.R. Sec. 210.54(a)(ii), (iii), (iv) (1988), and provide that any issue not raised in the petition will be deemed abandoned, 19 C.F.R. Sec. 210.54(a)(2) (1988). Moreover, Allied did far more than fail to argue; it affirmatively stated that the ALJ's construction was correct. Lizut v. Department of the Army, 717 F.2d 1391 (Fed.Cir.1983) (petitioner's endorsement of Presiding Official's decision effected a waiver).
 
 
 53
 Allied's argument that ITC added further claim limitations in the 1987 proceeding is disingenuous. The ALJ's ID states that the '257's specification "indicates that the lips must have a certain width relative to the width of the slot of the nozzle." 1984 ID at 41. Further, the ALJ's finding 336 states that "the minimum width of the first and second lip are given in the specification." ITC's 1987 determination stated those same parameters.
 
 
 54
 Allied says "ITC's 1987 claim construction ... convert[s] processes found infringing by ITC in 1984 to noninfringements" because "if the ITC incorporates the 'critical' lower limits in the claims, it must incorporate the no less 'critical' upper limits." The assertion fails because the 1984 and 1987 claim constructions are the same, that in 1987 being merely the listing of the actual parameters referred to in 1984 as being found in the specification. Moreover, Allied's point is that incorporation of the upper limits would have required a finding of noninfringement in 1984, which may account for Allied's failure to raise the argument in 1984. ITC consistently stated that it was not determining the upper limits that might fall within the scope of the '257 patent. What ITC might decide cannot, however, serve as a basis for reversal in this case. Beloit Corp. v. Valmet Oy, 742 F.2d 1421, 1423, 223 USPQ 193, 194 (Fed.Cir.1984) ("this court does not sit to review what the Commission has not decided"), cert. denied, 472 U.S. 1009, 105 S.Ct. 2706, 86 L.Ed.2d 721 (1985).
 
 III. Doctrine of Equivalents
 
 55
 Allied's main attack on ITC's finding of nonequivalence rests on the argument that ITC erred in law by "compar[ing] the lips of the 'new' processes to the lips of Allied's preferred nozzle" (emphasis Allied's), rather than "compar[ing] the 'new' processes to the '257 claimed process." Allied's argument fails because ITC did not do that. ITC assumed that every step of the new process (other than wide lips) was substantially the same as the corresponding limitation found in the '257 process. ITC's opinion evidences that it considered the effect of the lone difference between the HML and VAC processes and the patented process on the working of those processes as wholes. The finding that neither wide lips nor equivalents of those lips were employed in the HML and VAC processes led to an ultimate finding of nonequivalence between those processes and the patented process. That was not error. See Spectra Corp. v. Lutz, 839 F.2d 1579, 1582, 5 USPQ2d 1867, 1869-70 (Fed.Cir.1988); Pennwalt v. Durand-Wayland Corp., 833 F.2d 931, 934-36, 4 USPQ2d 1737, 1739-41 (Fed.Cir.1987) (in banc), cert. denied, --- U.S. ----, 108 S.Ct. 1226, 1474, 99 L.Ed.2d 426 (1988).
 
 
 56
 We have carefully reviewed the record in light of the remainder of Allied's arguments regarding equivalence and conclude that substantial evidence supports ITC's finding.
 
 CONCLUSION
 
 57
 Allied's appeal from ITC's advisory opinion is dismissed for lack of jurisdiction. ITC's modified exclusion order is affirmed.
 
 COSTS
 
 58
 Each party will bear its own costs.
 
 
 59
 DISMISSED-IN-PART AND AFFIRMED-IN-PART.
 
 
 
 *
 Circuit Judge Davis, who died on June 19, 1988, took no part in the decision of this case
 
 
 [1]
 Related cross-appeals (87-1493 & 87-1642) by Nippon Steel Corp. and Nippon Steel U.S.A., Inc. were dismissed by unpublished Order June 16, 1988
 
 
 [2]
 Allied did appeal from that final decision. Allied Corp. v. United States Int'l Trade Comm'n, 782 F.2d 982, 228 USPQ 1532 (Fed.Cir.1986). That appeal concerned two other patents, however, and did not relate to any issues involved here. Allied's appeal was dismissed as untimely. Id. at 984, 228 USPQ at 1533
 
 
 [3]
 The '257 specification provides that the "slot must have a width ... of from about 0.3 to about 1 millimeter" and that "[t]he first [nozzle] lip must have a width at least equal to the width of the slot, and the second [nozzle] lip must have a width of from about 1.5 to about 3 times the width of the slot." See id. at 15
 
 
 [4]
 Based on expert testimony, ITC construed the word "about" in the claims "to allow a variance of up to .05 at the lower end of the front nozzle lip ratio range." Id. at 15 n. 45
 
 
 [5]
 Exclusion Orders requiring an importer to certify that the article sought to be imported was manufactured by a process that the Commission has determined would not infringe a U.S. patent if practiced in the United States are common where a process patent is at issue and there is no way to discern by inspection of the imported article whether that article was manufactured by an infringing process. See Certain Multicellular Plastic Film, Inv. No. 337-TA-54, aff'd, Sealed Air Corp. v. United States Int'l Trade Comm'n, 645 F.2d 976 (CCPA 1981)
 
 
 [6]
 Allied's arguments concerning literal infringement deal only with claim construction and thus are entirely answered by our discussion of abandonment, infra
 
 
 [7]
 It is well established that "[a]dvisory opinions differ from declaratory orders in their lack of reviewability and in their lack of binding effect...." K. Davis, Administrative Law Treatise Sec. 4.09 at 265 (1958)
 
 
 [8]
 In denying mandamus in Canadian Tarpoly, this court indicated that petitioner could appeal "if adversely affected by a final determination" in the modification proceeding. That view was repeated in SSIH Equip. S.A. v. United States Int'l Trade Comm'n, 673 F.2d 1387, 1390, 213 USPQ 529, 531 (CCPA 1982). At the time of Canadian Tarpoly and SSIH, there was no time set for appeal from original exclusion orders. Now that original exclusion orders become unappealable after 60 days, neither Canadian Tarpoly nor SSIH can be read as approving appeals from refusals to modify exclusion orders. That question is not before us in this case
 
 
 [9]
 See, e.g., SSIH Equip. S.A. v. United States Int'l Trade Comm'n, 718 F.2d 365 (Fed.Cir.1983), wherein this court reviewed a modified exclusion order
 
 
 [10]
 No case cited by NSC supports its argument that this court lacks jurisdiction to review a modified exclusion order. NSC's cases deal with the nonanalogous situations (administrative decisions apart from the merits; decisions declining to institute proceedings; decisions to terminate an investigation)